Ted BRICE, Plaintiff-Appellant,

v.

Warden I. DAY, FCI, El Reno, Charles Hughes, Regional Director of Bureau of Prisons, Norman G. Carlson, Director of Bureau of Prisons, Griffin Bell, Attorney General of the United States, Bureau of Prisons, et al., Defendants-Appellees.

Wayne Ray GOWLER,
Plaintiff-Appellant,

v.

Irl E. DAY, Warden FCI, El Reno, Oklahoma, Doug W. Davis, Chief of Classification & Parole FCI, El Reno, Oklahoma, Defendants-Appellees.

Nos. 77–2083, 78–1161.

United States Court of Appeals,
Tenth Circuit.

Submitted On Briefs May 1, 1979.

Decided Aug. 27, 1979.

Rehearing Denied Sept. 27, 1979

William C. McClearn and Barbara Salomon, of Holland & Hart, Denver, Colo., filed briefs on behalf of plaintiffs-appellants.

Larry D. Patton, U. S. Atty., and S. Paul Richards, Asst. U. S. Atty., Oklahoma City, Okl., filed brief on behalf of defendants-appellees.

Before SETH, Chief Judge, and McWIL-LIAMS and LOGAN, Circuit Judges.

PER CURIAM.

These consolidated appeals are from orders of the trial court which dismissed each action for failure to exhaust administrative remedies. Counsel were appointed for petitioners, and they have been most helpful to the court.

Appellant, Ted Brice, was a prisoner at the Federal Correctional Institution, El Reno, Oklahoma, at the time he filed his pro se complaint. The relief sought was monetary damages from each defendant and "what other relief the court deems fair." His complaint alleged that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment due to overcrowded conditions at the El Reno Institution. More specifically, he asserted that the overcrowding had overtaxed the water system, dining hall, and hospital facility, and that he had suffered mental anguish and medical problems as a result. The Government's position in the district court was that Brice's action should be dismissed for failure to resort to administrative remedies available through the Bureau of Prisons.

Brice responded that such exhaustion cannot be required where a prisoner alleges violation of the Constitution. The district court dismissed the action for failure to affirmatively allege use of administrative remedies.

Wayne Ray Gowler's action arose from his brief confinement at the Federal Correctional Institution, El Reno, Oklahoma, as a "transient" or "holdover" inmate from July 19, 1977, to August 2, 1977, and from August 20, 1977, to September 6, 1977. Relief sought included declaratory and injunctive relief and monetary damages, both compensatory and punitive. Gowler's complaint listed five separate claims based on overcrowded conditions at the prison. The action was defended on the ground that Bureau of Prisons' Policy Statement No. 2001.-6A (1974) sets forth procedures for formal review of all prisoner complaints, and because Gowler admittedly had not used administrative remedies, summary judgment should be granted the defendants. Gowler's argument in opposition was that the brevity of his stay at El Reno effectively precluded use of administrative remedies. He also urges that monetary damages cannot be obtained through the administrative procedures urged by the Government. The district court granted summary judgment for the reason that Gowler had not used administrative remedies.

Appellants apparently concede that to the extent they sought injunctive, declaratory, or mandamus relief, the district court properly required exhaustion of administrative remedies. They do contend, however, that the doctrine has no application where damages are sought for a constitutional violation. They contend that the Bureau of Prisons' review procedure does not provide for an award of monetary damages. Therefore, they argue, the instant situation is one where exhaustion is not required because the administrative remedy is inadequate or wholly lacking. Furthermore, they style their action after the type recognized by the Supreme Court in *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619.

■ *Davis v. Passman,* —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846, is the most recent restatement of the criteria set forth in *Bivens.* Thus a person seeking to recover damages must first assert a constitutionally protected right which has been violated. The violation must, of course, meet the applicable case law standards. *See Bell v. Wolfish,* —— U.S., ——, 99 S.Ct. 1861, 60 L.Ed.2d 447. Also the complaining party must be entitled to relief which was explained in *Davis* as a person alleging violation of his constitutional rights and "who at the same time [has] no effective means other than the judiciary to enforce these rights." Furthermore, the complaining party, even after establishing his cause of action, will have his suit dismissed unless he can show that compensatory relief is necessary or appropriate to vindicate the constitutional violation. This last criterion embodies the Supreme Court's cautionary instruction in *Bivens* that damages are appropriate if there are "no special factors counselling hesitation in the absence of affirmative action by Congress," and an absence of affirmative action by Congress. *See also Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895.

■ Thus with the Court's cautionary instructions in *Bivens,* and considering *Davis v. Passman* and *Bell v. Wolfish,* we must note the extended conditions and requirements for a *Bivens* cause of action. To determine whether these requirements have been met necessitates some considerable and preliminary examination of the facts, remedies, and other circumstances. The requirements are strict and in the instances before us, it is apparent that preliminary fact-finding would be necessary to determine whether there is a possible *Bivens* cause of action. In this connection, we note again the requirement in *Davis v. Passman* that the plaintiff at the time have no effective means other than the judiciary to enforce his rights. The facts necessary for a determination whether these conditions have been met for a *Bivens* cause of action would be revealed by discovery in the typical case, and in the typical case there is no administrative remedy available. Here,

however, these facts have to be otherwise developed and in a manner appropriate to the conditions in which the prospective plaintiff has placed himself.

Thus if we assume that the petitions before us could indicate a *Bivens* cause of action as the appellants argue, we must nevertheless require an initial administrative inquiry.

The Second Circuit in *Hernandez v. Lattimore,* (2nd Cir.) (No. 78–2098, June 7, 1979), examined the relationship between the *Bivens* cause of action and suits under the Federal Tort Claims Act. It decided that the FTCA did not preclude *Bivens* actions. We have not considered this problem, as we do not reach it here.

It is apparent that prisoners have the same basic constitutional rights as others, subject, however, to some modification by reason of their confinement. They are incarcerated for some very good reason in an institution which provides for close confinement and complete supervision. The guards have clearly recognized authority, and their relationship with the prisoners is predicated on the need for absolute control. This is often with a background of possible violence. *See Marchesani v. McCune,* 531 F.2d 459 (10th Cir.). There are also other supervisory personnel involved in the control of the prisoners and who have contact with them. The proper relationship between the prisoners and the prison supervisors and administrators is an integral element in the maintenance of discipline. The supervisors' control within their authority and within constitutional limits must be absolute.

Under these conditions of confinement and control, it is not unreasonable to impose some preliminary steps to the consideration of prisoner grievances and claimed violation of rights. The matters here concerned are always related to prison conditions and treatment. They thus concern the structure and the individuals who are exercising the control and discipline. The prisoner grievances in these circumstances thus must

go through the existing machinery for investigation and resolution, or recommendation to higher authority. This machinery recognizes the chain of command and accommodates the abrasive relationships referred to above.

This court has insisted that this administrative route be first followed in a variety of cases and over an extended period of time. *Mower v. Swyhart,* 545 F.2d 103 (10th Cir.); *Marchesani v. McCune,* 531 F.2d 459 (10th Cir.); *Rivera v. Toft,* 477 F.2d 534 (10th Cir.); *Smoake v. Willingham,* 359 F.2d 386 (10th Cir.). This doctrine has been considered important to provide a possible solution to the problem; to reduce the intrusion of the courts into the administration of the prisons, *Daugherty v. Harris,* 476 F.2d 292 (10th Cir.); *Perez v. Turner,* 462 F.2d 1056 (10th Cir.); and to provide some fact-finding so that when or if the matter reaches the trial court, it will have some starting place as elsewhere herein referred to. *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.). *See also McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194. The initial administrative action would ordinarily be where the witnesses are readily available.

■ These are pro se proceedings, and it is reasonable to provide that the trial court have some background facts from which the true nature of the cause of action can be determined, and the need for further fact-finding be weighed. This procedure thus serves the same purpose and is very similar to discovery in ordinary litigation. The trial court can then sort out the ordinary tort claims from constitutional and other causes. It is the practice in this Circuit for the trial courts to restructure petitions in pro se proceedings to conform to what a preliminary view indicates the real issues to be. The recitations or the form in which the pro se petition is initially cast is not determinative and cannot be.

Thus under these unique conditions it is necessary in order to properly and effectively handle the problems to require the use of administrative channels. This is not to unduly interfere with or to place unreasonable conditions on the exercise of constitutional rights. It is instead the use of preliminary proceedings to accommodate the usual remedies to the fact that the plaintiff is imprisoned. It is naive to consider this an ordinary situation where the usual relationships prevail.

■ The prisoners in this action thus must work initially within this structure of authority, control, and established grievance procedure. These petitions cannot be misused as devices to challenge this authority and relationship. Instead the petitions must be considered and used only as bona fide grievances and claims to be resolved. They are not tickets to an immediate confrontation with the guards and supervisors outside the prison and in the court room no matter how they are framed.

Again, the prisoners' constitutional rights must be exercised in these difficult circumstances by the initial use of the administrative channels. It is perfectly obvious that this administrative consideration is not to resolve constitutional issues nor to consider damages, and it does not purport to do so. No one argues to the contrary. In *Martinez v. Aaron,* 570 F.2d 317 (10th Cir.), en banc we approved the trial court's requirement for an administrative record in a state prisoner's suit based on 42 U.S.C. § 1983. We said: "We consider this order and practice to be not only proper but necessary for the orderly consideration of the issues in this case and in other cases of this nature." We also there said: "We must observe that a record for comparable purposes is required in actions brought by federal prisoners."

The extent of use of the administrative remedies is to be within our prior decisions on this subject. This is to include our decisions which indicate when such procedure cannot be required. It is apparent that there must be a liberal application of the requirement if attempts to use the procedure should be thwarted by prison officials.

■ The trial court was correct in its dismissal of the petitions for the reason stated. Thus if petitions such as these are filed with the district courts, the court may dismiss them for failure to utilize the administrative review or may order them referred to the prison officials for an administrative review before the trial court considers them further.

AFFIRMED.