**James L. HATCHER, Appellant,**

v.

**OFFICE OF THE COMPTROLLER OF the CURRENCY et al.**

**No. 79–1312.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 25, 1980.

Decided Aug. 14, 1980.

---

Richard Murray, Washington, D.C., for appellant.

Dianne H. Kelly, Asst. U.S. Atty., Washington, D.C., with whom Carl S. Rauh, U.S. Atty., Washington, D.C. (at the time the brief was filed), John A. Terry, and Peter E. George, Asst. U.S. Attys., Washington, D.C., were on brief, for appellees.

Before ROBINSON, MacKINNON and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Concurring opinion filed by Circuit Judge MacKINNON.

MIKVA, Circuit Judge:

Appellant brought suit in the United States District Court claiming that his retirement from civil service was coerced by tortious conduct on the part of the appellees in violation of appellant's constitutional rights. The district court dismissed appellant's amended complaint with prejudice, and this appeal followed. We affirm the district court's order.

## I.  BACKGROUND

The events on which this suit is based began in September of 1975. Appellant Hatcher was, at that time, the Director of the Personnel Management Division of the Office of the Comptroller of the Currency (OCC). The OCC, acting on the advice of an outside consulting firm, reorganized its offices by consolidating certain departments, including the Personnel Management Division, to create a new Human Resources Division. Mr. Hatcher claims his difficulties began on June 17, 1976, when he initiated an appeal with the Federal Employee Appeals Authority (FEAA) alleging that this reorganization was unlawfully implemented and resulted in his reduction in rank and loss of certain duties.

While this FEAA appeal was pending, the OCC, at the suggestion of the Civil Service Commission, began an investigation of personnel practices within its offices. Appellee Robert Bloom, the Acting Comptroller of the Currency, discovered what he believed to be six unjustified personnel actions, five of which occurred in the Personnel Management Division and were traced to Mr. Hatcher. Mr. Bloom then ordered an investigation of the Personnel Management Division during the time Mr. Hatcher served as director. This investigation resulted in a notice to Mr. Hatcher on October 4, 1976, informing him that he would be suspended from his position as director for thirty days effective October 9, 1976, and placing him on nonduty status with pay until October 9th.

On October 7, 1976, appellant filed a complaint in United States District Court seeking to enjoin his suspension. Mr. Hatcher's complaint reiterated his belief that the OCC reorganization was illegal and accused the defendants of initiating the above–mentioned investigations in retaliation for his June 17th appeal to the FEAA.[1] The district court denied appellant's request for injunctive relief on the ground that appellant was not substantially likely to prevail on the merits of his claim because he had

---

1. At the time Mr. Hatcher filed his complaint in the district court, his initial appeal was still pending before the FEAA. The FEAA dismissed this appeal on November 1, 1976, having concluded that

> there has been no agency action taken with regard to appellant which the Federal Employee Appeals Authority may review with the possible exception of a reassignment effective September 14, 1975, and that the appeal from that action is untimely.

FEAA Decision No. DC752B0010, November 1, 1976.

failed to exhaust his administrative remedies. The district court also denied appellees' motion to dismiss. Mr. Hatcher then initiated a second appeal with the FEAA on October 26, 1976, claiming that his suspension was unlawful and in retaliation for his initial FEAA appeal.[2]

The OCC continued its investigation during the time appellant was suspended, and notified him that he would be removed from office as of December 3, 1976. This notice prompted a round of negotiations between appellant's counsel and the chief counsel for the OCC. These negotiations proved fruitful, leading to a settlement on December 10, 1976, that permitted appellant to remain in his position as director until he was eligible for retirement. Appellant, pursuant to the agreement, retired on February 16, 1977, with full benefits. Throughout these settlement negotiations, Mr. Hatcher's complaint was pending in the district court. The claims set forth in that complaint, however, were settled by the written agreement of December 10, 1976. On August 29, 1977, some six months after his retirement, appellant filed a second cause of action in the form of an amendment to his original complaint, alleging that his retirement was unlawfully coerced in contravention of his constitutional rights. Appellant's complaint sought compensatory and punitive damages as well as reinstatement to his former position.

We write to clarify two issues discussed in the district court's well–reasoned opinion. The first involves the government's argument that appellant is estopped from contesting the legality of his retirement while he is receiving the benefits from the settlement agreement under which he retired. The second and more important issue is the significance to this case of the Supreme Court's decision in *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

## II. THE SETTLEMENT AGREEMENT

[1] The appellees moved to dismiss Mr. Hatcher's amended complaint in the district court, arguing that appellant was estopped from contesting his retirement because he had accepted the benefits of the December settlement agreement. Although the district court purported not to reach the estoppel question, the government pursued this argument with great vigor on appeal. Because the terms of the settlement agreement did not clearly prohibit appellant's second cause of action as set forth in the amended complaint in the district court, we reject the government's estoppel argument. No provision in the written settlement agreement furnishes any basis for such a ruling.[3]

Normal settlement language would have called for plaintiff to dismiss his suit, perhaps with prejudice, or would have called for a covenant not to sue. With both sides

2. On March 2, 1977, the FEAA dismissed appellant's October 26, 1976, challenge to his thirty–day suspension as untimely filed. FEAA Decision No. DC752C70028, March 2, 1977.

3. The relevant clause in the agreement reads as follows:

WHEREAS Mr. James L. Hatcher does not desire for the Agency to permit his removal to go into effect or to pursue the right of appeal from such removal to which he would be entitled should such removal go into effect . . . .

The right of appeal referred to is obviously the right to an administrative appeal. At oral argument, Hatcher's counsel, who represented Hatcher during the settlement negotiations, clearly indicated that settlement of Hatcher's judicial claims, although discussed, was specifically excluded from the settlement contract:

JUDGE MIKVA: You were present at all the negotiations of the settlement?
MR. MURRAY (Counsel for Appellant): Yes, Your Honor.
JUDGE MIKVA: Did the government ever request that he agree to drop the suit?
MR. MURRAY: Yes, your Honor. There was a draft . . . there was a draft, initial draft, which had that kind of language in there. Suit . . . specific mention of the suit involved, which was dropped out.
JUDGE MIKVA: And you resisted that language?
MR. MURRAY: Yes, your Honor.
JUDGE MIKVA: And it was dropped out of the settlement?
MR. MURRAY: Yes, your Honor.

represented by counsel, we cannot assume anything from the omission of such procedures other than the obvious point: the claim set forth in the amended complaint was not intended to be affected by the agreement.

Simply put, we cannot interpret the silence in this contract as indicative of an agreement to dispose of appellant's claims as set forth in the amended complaint. Not only would such an interpretation be inconsistent with the rule of contract construction that "silence is not generally taken as indicating an agreement," *Mobil Oil Corp. v. Federal Power Commission*, 187 U.S.App. D.C. 112, 116, 570 F.2d 1021, 1025 (1978), it is inconsistent with normal lawyering.

### III. THE CONSTITUTIONAL CLAIM

■ Appellant, in his amended complaint, sought damages for alleged violations of his constitutional rights. Specifically, appellant claimed his coerced retirement violated the due process clause of the Fifth Amendment. The district court, citing *Davis v. Passman*, 571 F.2d 793 (5th Cir. 1978), concluded that "plaintiff's amended complaint fails to raise a compensable constitutional claim."[4] This Fifth Circuit decision was subsequently reversed and the Supreme Court held that a damages cause of action could be based directly on the Fifth Amendment. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Unlike this case, *Davis* involved an allegation of sex discrimination in violation of the equal protection component of the due process clause. This Supreme Court decision does not cover the case at issue here, and cannot alter our view that the district court disposition was correct.

Appellant seems to believe that the fact of his retirement coupled with an assertion that he was denied due process is sufficient to establish a compensable constitutional claim. Assuming appellant is correct in his allegation that his retirement was coerced, his claim is nonetheless defective because he does not, and cannot, state what procedural protections were denied him. Throughout his quarrels with the OCC, appellant was represented by counsel. Both appellant and his attorney signed the settlement agreement pursuant to which he resigned. In fact, appellant resigned without invoking the review process of the Civil Service Commission not because procedural protections were unavailable, but because his resignation was part of the settlement agreement.

Whether or not his retirement was coerced as alleged is immaterial to our determination that appellant was not deprived of liberty or property without due process. Appellant does not argue that administrative procedures to remedy his injury (coerced retirement) do not exist.[5] Instead appellant assumes the validity of his constitutional claim and argues that the district court decision requiring him to exhaust those remedies will result in simultaneous administrative and judicial proceedings, since he cannot obtain damages in the administrative proceeding. We need not consider whether, under the exhaustion doctrine, judicial resolution of a damages claim must await completion of administratively processed claims arising from the same set of facts; that question is not raised by an appellant who has failed at the threshold to

---

4. *Hatcher v. Office of the Comptroller of the Currency*, No. 76–1869, Memorandum Opinion at 10 (D.D.C. December 15, 1979).

5. We do not reach one of the questions left undecided by *Davis* —whether the existence of the congressionally created civil service appeal remedies precludes a damages cause of action under the Fifth Amendment. In *Davis* the plaintiff challenged her dismissal as an aide to Congressman Passman as a violation of her Fifth Amendment rights. Her position was not subject to civil service regulations, nor could a court order reinstatement since the Congress-

man was not returning to office. In this context the Supreme Court noted that "were Congress to create equally effective alternative remedies, the need for damages relief might be obviated." *Davis v. Passman*, 442 U.S. 228, 248, 99 S.Ct. 2264, 2278, 60 L.Ed.2d 846, 864 (1979). The Fifth Circuit has read this language in *Davis* as precluding a party from opting for damages relief in lieu of the remedies available under civil service regulations. *Bush v. Lucas*, 598 F.2d 958, 961 (5th Cir. 1979). *See also Brice v. Day*, 604 F.2d 664, 666 (10th Cir. 1979) (dictum).

establish the existence of a constitutional violation.[6] The district court correctly dismissed appellant's claims as alleged in the amended complaint.

*Affirmed.*

MacKINNON, Circuit Judge: (concurring).

I join in the foregoing disposition of the case but would also hold that appellant is estopped to attack the settlement that resulted in his retirement since he has accepted the very valuable benefits of the settlement. The receipt of the benefits of the settlement which were acquired by inducing the Government to change its position on discharging Hatcher creates an equitable estoppel, an estoppel in pais, which denies him the right to plead or prove that his retirement was improper. 28 Am.Jur.2d, Estoppel and Waiver, §§ 26, 27, 33. Estoppel may rest upon conduct and does not need an express written agreement. The Government gave up its right to discharge appellant for cause and allowed him to continue as an employee until he qualified for enhanced retirement benefits. This was in return for appellant's dismissal of his original cause of action. In my view his acquisition of these enhanced retirement benefits and his refusal to surrender them estops him from attacking the settlement. He cannot keep the benefits he bargained for and at the same time attack the agreement that gave them to him. It would be grossly inequitable now to permit Hatcher to attack the contract that he is using to obtain regular retirement benefits. *Id.*

---

**6.** *Wallace v. Lynn,* 507 F.2d 1186 (D.C.Cir. 1974); *Freeman v. Shultz,* 468 F.2d 120 (D.C. Cir.1972); *Brice v. Day,* 604 F.2d 664, 667 (10th Cir. 1979). In *Brice,* a federal prisoner filed a pro se complaint alleging that overcrowded conditions in the federal prison subjected him to cruel and unusual punishment in violation of the Eighth Amendment. The complaint sought injunctive, declaratory or mandamus relief, as well as monetary damages for the alleged constitutional violation. The court of appeals held that plaintiff's constitutional claims must await exhaustion of the administrative process even though administrative consideration could not resolve the constitutional claims or award damages relief.