Dan S. HESSBROOK, Plaintiff-Appellant,

v.

M.C. LENNON, Jr., D.A. French, and J. Saxman, Defendants-Appellees.

No. 84–1075.

United States Court of Appeals, Fifth Circuit.

Dec. 4, 1985.

Rehearing Denied Jan. 30, 1986.

---

Dan S. Hessbrook, pro se.

Edward C. Prado, U.S. Atty., Hugh P. Shovlin, Asst. U.S. Atty., San Antonio, Tex., for defendants-appellees.

Before RANDALL, JOHNSON, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Appellant is a federal prisoner. His *Bivens*[1] action seeking monetary damages, and no other relief, for an alleged violation of his Eighth Amendment rights was dismissed without prejudice by the federal district court for his failure to exhaust administrative remedies. We affirm the holding that exhaustion is required, but remand for consideration of whether the suit should be held in abeyance, with jurisdiction retained, pending exhaustion, rather than being presently dismissed.

### Facts and Proceedings Below

Appellant Dan S. Hessbrook is a federal prisoner incarcerated in the Federal Correction Institution (FCI) at Bastrop, Texas. On June 17, 1982, acting *pro se*, he filed this civil suit in the court below alleging violations of his Eighth Amendment rights. He asserted that he had been denied adequate medical attention, and that he had been provided with an inadequate and ill-suited pair of shoes, which aggravated a prior foot injury and a tendency, caused by diabetes, for his feet to swell.[2] The complaint alleges "medical and mental damage being to the extent of $1,500,000 all being a severe deprivation of Plaintiff's Right to protection under the 8th Amendment to the

1. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

2. The complaint names as defendants (who are appellees here) the Warden of FCI Bastrop, Lennon, in his capacity as supervisor of the other defendants; Clothing Room Supervisor French, insofar as he "is responsible for issuance of proper fitting shoes"; and Saxman, who "as hospital Administrator is responsible for the proper medical care of Plaintiff [appellant]." No other defendants are named.

U.S. Constitution." The only relief sought is that the "Court find Defendants ... at fault; and thereby grant Plaintiff Judgment in the amount of $1,500,000; to be paid in equal shares by said Defendants herein." The court referred the matter to a magistrate.

On August 30, 1982, appellees filed a motion to dismiss, alleging Hessbrook's failure to exhaust administrative remedies, and his failure to file a Federal Tort Claims Act (FTCA) claim. On March 8, 1983, the district court directed appellant to show cause why his suit should not be dismissed for nonexhaustion. Appellant responded by arguing that he should be excused from the exhaustion requirement because the administrative remedies available to him were inadequate. He predicated this assertion primarily on the contention that prison officials had no authority to award money damages for constitutional torts. Appellant did acknowledge that he might be able to obtain compensatory damages under the FTCA, but not punitive damages. The magistrate recommended dismissal for appellant's failure to exhaust, basing his recommendation in part upon a determination that a federal prisoner "challenging the conditions of his confinement" must first seek redress through the Federal Bureau of Prisons, which has been charged with primary responsibility for the supervision of prisoners. The magistrate also found that Hessbrook had failed to show that he had no effective means other than through the judiciary to remedy the alleged infringement of his constitutional rights, a prerequisite for a *Bivens* action. Over ap-

pellant's objections to the magistrate's recommendations, the district court, on December 6, 1983, dismissed appellant's suit without prejudice. This appeal followed.

### Exhaustion of Administrative Remedies

■ Federal Tort Claims Act and *Bivens* claims are not mutually exclusive. *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). The district court dismissed the case without prejudice over appellant's contention that, by asserting a *Bivens* action for money damages, he was not required to exhaust administrative remedies. We must determine whether the legal independence of FTCA- and *Bivens*-type claims suffices to excuse a federal prisoner from a requirement that he exhaust available administrative remedies before asserting his *Bivens* claim for money damages in the federal courts.[3] We conclude that, even where only money damages are sought, maintenance of a *Bivens* claim by a federal prisoner, at least where he complains of his treatment as a prisoner by the prison authorities and the allegedly tortious conduct is not clearly wholly outside the FTCA, does not alone suffice to excuse the requirement that the prisoner exhaust possibly available administrative remedies.

### The Nature of the Cause of Action

*Bivens* actions are "premised on the theory that victims of a constitutional violation by a federal agent have an implied right of action to recover damages against the official absent any statute conferring such a right." *Muhammad v. Carlson,* 739 F.2d 122, 124 (3d Cir.1984) (citation omitted).

---

**3.** The *Carlson v. Green* Court indicated that two conditions might "defeat" a *Bivens* cause of action in a particular case: "when defendants demonstrate 'special factors counselling hesitation in the absence of affirmative action by Congress' ... [or] when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective." 100 S.Ct. at 1471 (quoting and citing *Bivens; citing Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)) (emphasis in original) (citations omitted). Neither consideration is conclusive here. Congress has not expressly indicated that consti-

tutional tort claims are to be brought *only* under the FTCA; nor has there been an absence of "affirmative action by Congress" in the areas of such tort claims against the government, as evidenced by the FTCA itself and its comprehension of some *Bivens*-type claims. See 28 U.S.C. § 2680(h). Even though an exhaustion requirement is attached statutorily *to the FTCA,* the possibility of appellant's independent maintenance of a *Bivens* action does not necessarily compel the conclusion that he may therefore be excused from an exhaustion requirement simply because he asserts that he is not maintaining an FTCA action.

■ The FTCA provides a remedy for a "negligent or wrongful act or omission" by an officer or employee of the federal government acting within the scope of his employment. 28 U.S.C. § 2672. Certain specific kinds of tort claims, however, are expressly excluded from the FTCA. 28 U.S.C. § 2680(h). Thus, broadly speaking, the FTCA provides a waiver of the sovereign immunity of the United States for *negligence* actions, but not for certain *intentional* torts,[4] which, if they violated a constitutional right, would often be actionable instead by a *Bivens*-type suit. Congress amended the FTCA exclusions section in 1974 to expressly retain a subset of the otherwise excluded torts, when committed by federal "investigative or law enforcement officers." [5]

Appellant's complaint does not expressly predicate his suit upon the FTCA. Instead it asserts a violation of his Eighth Amendment right to be free from cruel and unusual punishment while incarcerated. But the FTCA exclusions in section 2680 do not obviously and clearly preclude an FTCA cause of action by appellant, and on brief appellant suggests that he "probably does have a valid tort claim within the scope of the FTCA." Appellant recites further that he "firmly believes he also has a valid claim arising directly under the Constitution and has *chosen* that implied cause of action to address the wrongs done him. He may not be relegated to FTCA with its attendant [exhaustion] requirements.... His failure to file an administrative claim ... is irrelevant." (Emphasis added.) Reading the complaint broadly and as a whole, it is by no means wholly clear that only an intentional tort of the kind excluded from the FTCA is alleged.[6] We cannot find, therefore, as a matter of law, even

4. The relevant list of exclusions includes "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit or interference with contract rights...." 28 U.S.C. § 2680(h).

5. These generally *Bivens*-type torts specifically within the scope of the FTCA are: "any claim arising ... out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," when committed by such officers. 28 U.S.C. § 2680(h) (1974). The subsection goes on to define "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law." *Id.* Prison officials may make searches of inmates' quarters and may seize evidence. It is arguable, therefore, that they come within the ambit of this definition; if so, then even some *intentional* torts by prison officials would be actionable under the FTCA. Further, even if prison officials are not "investigative or law enforcement officer[s]," nevertheless their torts of the variety not listed in the first (exclusionary) clause of section 2680(h) (*see* note 4, *supra*) might be within the FTCA notwithstanding that they were to some extent intentional.

6. Appellant's complaint alleges that he was given a size and type of shoe ill-suited to his particular medical conditions—diabetes (one symptom of which is poor circulation to the extremities, which may result in swelling) and a former injury, including broken bones in his right foot—despite his requests for alternative footwear. He maintains that on several occasions he requested medical attention, to which the alleged response was, "When your feet get bad enough, we will do something with them." His complaint does note that he finally did receive medical attention (but only when his foot "swelled and turned blue to the point that he could no longer walk"), which he asserts was inadequate, as well as some different ("Hush Puppy"-type) shoes, which he claims were too large and did not provide adequate support for his injured foot.

Although his complaint does allege that the defendants "have acted, and are acting in concert with one another in a vicious, and determined [*sic*] to deprive your Plaintiff of proper medical care, and to further Plaintiff's pain, and suffering to such extent as to cause permanent mental disorder through constant paranoia, thereby causing Plaintiff to contemplate the comforts of suicide," we note that the specific acts and omissions in the complaint were allegedly by *employees* under the defendants' supervision, not by defendants themselves, with the possible exception of defendant French. Nor is there any allegation or other indication in the complaint or in any of the pleadings that any of the defendants ordered or otherwise instructed their subordinates to deny appellant suitable shoes or medical attention. The complaint also recites that "as Warden of FCI, Bastrop, Texas; Defendant Lennon is responsible for and approves [*sic*] all acts of *negligence* on behalf of his employees therein. (i.e., Defendants, French and Defendant Saxmn [*sic*])." (Emphasis added.)

accepting all the allegations of appellant's complaint as true, that appellant's claim necessarily falls outside actions covered by the FTCA, even if it might also be properly maintained as a *Bivens*-type action.

*The Exhaustion Requirement*

The exhaustion of administrative remedies doctrine requires not that only administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts. *See Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938); *see also McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 1662–63, 1664, 23 L.Ed.2d 194 (1969); *Patsy v. Florida International University*, 634 F.2d 900, 903–04 (5th Cir. 1981) (en banc), *rev'd and remanded on other grounds sub nom. Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Such a policy is echoed by the FTCA itself, which requires that claims asserted under that Act be first submitted to the relevant agency. 28 U.S.C. § 2675(a); *see also* 28 C.F.R. § 14.2(b)(1). We perceive no reason, in a case where, as here, the FTCA appears to hold open the possibility of providing some relief, why the mere *election* to proceed under a substantially similar, if independent, cause of action should permit a federal prisoner to circumvent a clearly enunciated congressional policy favoring administrative settlement of tort claims against the United States or its employees or officers, *see* S.Rep. No. 1327, 89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 2515, 2518 ("Another objective ... is to reduce unnecessary congestion in the courts."), and so to artificially avoid the procedural prerequisites to maintaining such a suit in the federal courts.

Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action. *See, e.g., Patsy v. Florida International University*, 634 F.2d at 903–04.

Appellant asserts that the Bureau's own regulations preclude the administrative consideration of tort claims. He points to language respecting the Bureau's "Administrative Remedy Procedure" [7] contained in Subpart B of 28 C.F.R. Part 542: "Filings will not be accepted under the Administrative Remedy Procedure for tort claims ..." 28 C.F.R. § 542.12. We think, however, that appellant misconstrues the scope of this prohibition. In particular, we note that Subpart C of *Part 543*—a provision wholly distinct from Subpart B of *Part 542*—provides expressly for Bureau consideration of FTCA claims, including a mandate that "[t]he Bureau of Prisons *shall* consider administrative claims asserted under the Federal Tort Claims Act in accordance with the provisions of 28 CFR 14.1 et seq." 28 C.F.R. § 543.30.[8] We think it clear, therefore, that the tort claim prohibition contained in 28 C.F.R. § 542.12 is not applicable to FTCA claims.[9] We reject appellant's

---

**7.** This administrative procedure is one "through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. The procedure is outlined in 28 C.F.R. §§ 542.-10–542.16.

**8.** The remainder of this section provides in pertinent part:

"The Director of the Bureau of Prisons is delegated authority by 28 CFR 0.96 and 0.172 to consider, adjust, determine, compromise, settle, and pay federal tort claims if the amount of a proposed adjustment, compro-

mise, settlement, or award does not exceed $2500."

**9.** The Third Circuit has characterized this administrative FTCA procedure as a "narrow exception" to the general prohibition against filing tort claims in the Bureau's Administrative Remedy Procedure. *Muhammad v. Carlson*, 739 F.2d 122, 125 (3d Cir.1984). The Sixth Circuit used this regulatory language to infer a total ban of tort claims from among federal prisoners' administrative remedies: "Administrative officials, therefore, do not have the authority to award monetary damages for tort claims against the government or against other offi-

assertion that to require him to exhaust administrative remedies is to require him to seek remedies unavailable to him through the administrative process, that is, to engage in a patently futile course of action.

Nor, contrary to appellant's assertions, is it clear that the FTCA will not afford him adequate relief for his claim. The FTCA provides that up to $25,000 in monetary damages may ultimately be obtained, in proper circumstances and with the authorization of the Attorney General, through administrative channels prior to the recourse to the courts; this includes up to $2,500 as an administrative settlement by the Director of the Bureau without the need for the Attorney General's approval. *See* 28 U.S.C. § 2672; 28 C.F.R. §§ 0.96(1), 0.172; *cf. id.* § 14.6(a). The regulations additionally appear to admit of the possibility that the Attorney General might, in a proper case, grant settlement exceeding even the $25,000 limitation. *See* 28 C.F.R. § 0.172(b) ("Assistant Attorney General shall have authority to adjust, determine, compromise, and settle *any other claim* involving the Department [of Justice] under Section 2672 of Title 28." (Emphasis added.)); *see also* 28 C.F.R. §§ 14.6, 0.160–0.170.

The amount limitations sections nowhere expressly preclude the *entertainment* by the Bureau of a claim *alleging* an amount in excess of the maximums specified; they simply preclude an "amount of *settlement*," 28 C.F.R. § 0.96(1) (emphasis added), or an "amount of *proposed* adjustment, compromise, *settlement*, or award," 28 C.F.R. § 0.172(a) (emphasis added), which exceeds the $2,500 limitation applicable to the Bureau without Attorney Gener-

al authorization. The mere *allegation* of a larger amount of money damages on the face of a complaint does not of necessity preclude the possibility, were an administrative remedy first pursued, that a satisfactory settlement within the limitations amounts would be reached. This possibility is precisely of the kind which supports the policy favoring imposition of an exhaustion requirement. *Cf. McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Miller v. Stanmore*, 636 F.2d 986, 991 & n. 5 (5th Cir. 1981).

We point out that there is always the possibility of recourse to the courts in the event that an administrative determination concludes that liability is lacking, or if the award proposed is insufficient or otherwise unacceptable. The statute and regulations provide only that, *if accepted*, an administrative settlement relieves the United States and its employees of further liability. *See* 28 U.S.C. § 2672; *cf.* 28 C.F.R. § 0.172(a) ("*proposed* adjustment, compromise, *settlement*, or award") (emphasis added); *id.*, § 543.30 (same); *id.*, § 543.-31(e) ("Regional Counsel of Bureau authorized *to proposed* [*sic*] to the claimant a settlement") (emphasis added); *id.*, § 543.-31(f) (same, for General Counsel of Bureau); *id.*, § 543.31(h) ("An individual whose claim is denied may elect to institute suit."). The FTCA nowhere provides that exhaustion is *not* required for claims in excess of the statutory limits on administrative awards. We therefore reject appellant's contention that available administrative remedies are wholly inadequate, and that requiring exhaustion is consequently inappropriate.[10]

---

cials." *Goar v. Civiletti*, 688 F.2d 27, 29 (6th Cir.1982). This conclusion appears to us to give insufficient weight to the broadly inclusive wording of 28 U.S.C. §§ 2672, 2675 and of 28 C.F.R. §§ 0.172(a) and 543.30. *See also* 28 C.F.R. §§ 0.96(1), 14.2(b)(1) and 14.3(b). We think the relevant subparts are entirely distinct, and therefore respectfully disagree with the characterizations of the tort filings prohibition of 28 C.F.R. § 542.12 by our sister circuits.

**10.** We note in this context that the 1948 version of 28 U.S.C. § 2675(b) provided for withdrawal

of such an administrative claim from the agency, upon fifteen days' written notice. But Congress in 1966 deleted this provision which had nearly relegated administrative pursuit of a tort claim to a mere formality and option to the claimant. *See* Pub.L. 89–506, § 2, 80 Stat. 306 (1966). The statute now provides for mandatory submission to the relevant federal agency; only after six months have elapsed without final agency action may the claimant legally presume to have a final agency disposition and proceed to the courts. *Compare* 28 U.S.C. § 2675(b)

■ Perhaps more problematical is that appellant arguably seeks punitive damages. Punitive damages are not available under the FTCA. *See* 28 U.S.C. § 2674. They *may*,[11] however, be available in *Bivens* actions. *Carlson v. Green,* 100 S.Ct. at 1473. Appellant's complaint does not specifically pray for punitive damages, but it does ask for $1.5 million in money damages. These are, in effect, claimed as actual damages, since the complaint asserts "medical and mental damage being to the extent of $1,500,000." However, appellant, in his "Motion to Proceed Without Exhaustion of Administrative Procedures," asserted below that this "implies he is seeking punitive as well as compensatory damages." Hence, appellant asserted that he "should not be relegated to a remedy under the FTCA." The allegations of the complaint are not affirmatively inconsistent with entitlement to punitive damages, were such properly requested. However, it is not necessarily true that an inability to administratively award punitive damages would, in any event, preclude the achievement of a satisfactory administrative settlement. *Cf. Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). We think that the mere fact that punitive damages are requested, therefore, should not suffice to excuse a prisoner from the administrative exhaustion requirement. Thus, for the same reasons that we determine prevent the mere assertion of money damages in excess of the statutory and regulatory limits on proposed administrative awards from precluding the exhaustion requirement, we think that its application is not excused merely by virtue of a prayer for punitive damages.

(1948) *with* 28 U.S.C. § 2675(a) (1966). This indicates to us the intention of Congress to demand exhaustion for tort claims covered by the FTCA.

**11.** *Cf. id.* at 1486 (Rehnquist, J., dissenting) (whether punitive damages are available in *Bivens* action is undecided).

**12.** The Court, in a section 1983 case specifically concerned with whether a denial of medical attention constituted a violation of the Eighth

*Questionable* Bivens *Allegations*

"[A] plaintiff seeking a damages remedy under the Constitution must first demonstrate that his constitutional rights have been violated." *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 2278, 60 L.Ed.2d 846 (1979). It is by no means clear that appellant has here alleged facts sufficient to reflect that he has been the victim of cruel or unusual punishment in contravention of the Eighth Amendment. The criteria outlined in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), are instructive. In that case, the Supreme Court considered whether certain local pretrial detention conditions and practices offended the constitutional rights of detainees:

"A court must decide whether the disability is imposed *for the purpose of* punishment or whether it is but an incident of some other legitimate governmental purpose.... Absent a showing of an *expressed intent to punish* on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and *whether it appears excessive* in relation to the alternative purpose assigned [to it].'" 99 S.Ct. at 1873-74 (emphasis added).

The factual allegations of appellant's complaint are amenable to the interpretation that mere negligent acts or omissions by FCI employees are charged, as we have indicated (*see* notes 2 & 6, *supra* ). Thus, the requirement that the defendant's actions be intentional is not necessarily and plainly satisfied on the face of appellant's complaint.[12] Should appellant's conclusory

Amendment, said that "*deliberate* indifference to *serious* medical needs constituted the 'unnecessary and wanton infliction of pain' ... prescribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The Court concluded that, "how[ever] evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C.] § 1983." *Id.* But

"an inadvertent failure to provide adequate medical care cannot be said to constitute 'an

allegation that he received constitutionally prescribed "punishment" fail on the merits, his characterization of his complaint as a *Bivens* action necessarily fails also. A court entertaining this suit, and subject to the rule that original *pro se* complaints are to be liberally construed, would then be left with only ordinary negligence claims, cognizable only under the FTCA. This observation, and considerations of judicial economy, reinforce our conclusion that appellant here should be required to exhaust available administrative remedies before seeking redress in the courts.

### Other Considerations

In *Carlson v. Green,* the Supreme Court determined that nothing in the FTCA or its legislative history showed that Congress meant to preempt *Bivens* actions or to create an equally effective remedy for such tortious constitutional violations. 100 S.Ct. at 1472. That Congress has not designated the FTCA as an "explicitly declared ... *substitute* for recovery under the Constitution" (which would serve to defeat the *Bivens* action in particular cases, *see* 100 S.Ct. at 1471 (emphasis in original)), is, however, no impediment to a decision not to excuse the exhaustion requirement. None of the Court's primary concerns respecting the advantages of a *Bivens* action over an FTCA claim—as an effective deterrent, the availability of punitive damages, the option to have a jury trial, and the independence of the action from state law—are implicated directly here. We do not by requiring exhaustion effectively preclude the ultimate judicial assertion of a *Bivens* action, which was the Court's explicit concern in *Carlson v. Green.* We merely delay that assertion. If a disposition satisfactory to appellant is not reached administratively, he may then pursue the matter in the federal courts.

We note also that the Congress has, in a similar context—that of federal prisoners'

assertions of section 1983 actions—provided an exception to the usual "no exhaustion rule" applicable to section 1983 claims. *See* 42 U.S.C. § 1997e; *cf. Patsy v. Board of Regents,* 102 S.Ct. at 2563–65. Unlike the situation which obtains for section 1983, there is no long-standing judicial or statutory rule against imposing a requirement for exhaustion of *federal* administrative remedies in constitutional tort cases. To the contrary, and in contrast to the character of the legislative history regarding exhaustion for section 1983, both the legislative history of the FTCA and the language of the Act itself indicate Congress' intention that administrative relief be a prerequisite to suit in the courts for tort claims. Section 2674 is an explicit example. We perceive no reason to depart from this policy, especially where, as here, it is only the claimant's own *characterization* of his claim which forms the basis for the asserted excuse from the exhaustion requirement. The exhaustion requirement reflects a judicial recognition of the separation of powers in our federal system, and should not be so lightly disregarded.

In addition, we have on previous occasions in a variety of circumstances required that federal prisoners exhaust their administrative remedies before asserting a *Bivens* claim in the courts respecting their treatment as prisoners. *See, e.g., Miller v. Stanmore,* 636 F.2d at 991 & n. 5. In particular, we have required that federal prisoners' *Bivens* actions seeking injunctive relief and damages first exhaust administrative remedies. *Miller v. Stanmore,* 636 F.2d at 991 (injunctive and declaratory relief and damages; due process violations). *See also Paden v. United States,* 430 F.2d 882, 883 (5th Cir.1970) (injunctive relief against First Amendment deprivation by prison authorities); *Hess v. Blackwell,* 409 F.2d 362, 363 (5th Cir.1969) (injunctive relief against invasion of Eighth Amendment rights). There is the possibili-

unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. *Medical malpractice does not*

*become a constitutional violation merely because the victim is a prisoner.* In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence *deliberate indifference* to serious medical needs." *Id.* 97 S.Ct. at 292 (emphasis added).

ty of anomalous results should we decline to extend the exhaustion requirement to such *Bivens* actions which seek *only* monetary damages. For example, in a "mixed" case (*i.e.*, seeking both injunctive relief and monetary damages) where the request for injunctive relief is mooted, or determined to be frivolously asserted, or otherwise withdrawn,[13] would the exhaustion requirement also then be mooted? Would the addition to an FTCA claim of a prayer for punitive damages similarly relieve the prisoner—even where the claim is later revealed to have been frivolous and included solely to avoid the exhaustion requirement?

We can thus perceive of no statutory, constitutional or persuasive policy reason to excuse appellant from the application of an administrative exhaustion requirement in his self-styled *Bivens* action. *Accord, Brice v. Day,* 604 F.2d 664 (10th Cir. 1979).[14] We respectfully disagree with the contrary position of *Muhammad v. Carlson,* 739 F.2d 122 (3d Cir.1984) and *Goar v. Civiletti,* 688 F.2d 27 (6th Cir.1982). Generally for the reasons stated in *Brice v. Day, supra,* we believe that a broad exhaustion requirement is particularly appropriate in cases involving federal prisoner complaints against prison officials relating to their conditions of or treatment during confinement.

### Conclusion

■ For the reasons stated, we sustain the district court's determination that appellant was required to exhaust his federal administrative remedies as a condition of pursuing his *Bivens* suit in federal court. However, the district court apparently did not give consideration to holding the *Bivens* suit in abeyance, pending exhaustion,

as opposed to dismissing it. The distinction may impact relevant limitations concerns. As we have not previously considered the necessity for exhaustion where damages only are sought, and as two other Circuits have held that exhaustion is not required, an outright dismissal might be inequitable in the present case. That is a matter for the district court to consider in the first instance. *See Hayes v. Secretary of Defense,* 515 F.2d 668, 675 (D.C.Cir.1975). Accordingly, though we hold that the district court did not err in determining that appellant had not exhausted his administrative remedies as required, the case is nevertheless remanded to consider whether a stay of the action pending exhaustion of remedies, as opposed to a dismissal, is more appropriate.

REMANDED

---

13. Appellant filed a "Motion for Permanent and Preliminary Injunction" after the filing of his complaint. He there sought to prevent his transfer from FCI Bastrop to any other facility, presumably because of his stated concern that such transfer would inhibit his maintenance of this suit. He subsequently moved to dismiss this motion, apparently having obtained an agreement from FCI Bastrop officials that he would not be transferred.

14. The *Brice* opinion deals with two separate suits, one by Brice and one by Gowler. In the *Bivens* claim of the prisoner Brice "[t]he relief sought was monetary damages from each defendant and 'what other relief the court deems fair,'" while prisoner Gowler's claim sought "declaratory and injunctive relief and monetary damages, both compensatory and punitive." *Brice,* 604 F.2d at 665. The *Brice* opinion in no way predicates its exhaustion holding on any determination that prisoner Brice's suit was for more than money damages.