UNITED STATES of America ex rel. Alonzo Howard JONES, Petitioner-Appellant,

v.

Richard DeROBERTIS, et al., Respondents-Appellees.

No. 84-2539.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1985.

Decided June 17, 1985.

Rehearing and Rehearing En Banc Denied Aug. 22, 1985.

Daniel R. Warren, Jenner & Block, Chicago, Ill., for petitioner-appellant.

David E. Bindi, Illinois Atty. Gen. Office, Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, EASTERBROOK, Circuit Judge, and WRIGHT, Senior Circuit Judge.*

EASTERBROOK, Circuit Judge.

Alonzo Howard Jones is serving a lengthy term of imprisonment following his conviction in state court for several offenses in the course of a riot in the Menard Penitentiary. During the riot three officers were stabbed to death, others were injured, and several guards and inmates were taken hostage and threatened with death. The evidence in the state trial would have supported a conclusion that Jones was a ringleader, that he threw a homemade firebomb at a guard tower in the dining room to start the riot, that he

---

* Honorable Eugene A. Wright, of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

murdered one of the guards himself, and that he was in command during the period the inmates barricaded themselves and held hostages. *See People v. Bassett*, 56 Ill.2d 285, 307 N.E.2d 359 (1974) (affirming his convictions but vacating his sentence of death).

We omit further description of the facts and procedural details of this case, which have been set out in the opinion of the Supreme Court of Illinois, a prior opinion of this court, see 676 F.2d 261 (7th Cir.1982), and a lengthy opinion of the district court. We assume familiarity with these opinions and turn directly to Jones's arguments.

## I

Jones first argues that he is entitled to relief because the state induced witnesses to give false testimony at his trial (or at least knowingly let perjured testimony pass without correction). He raised this contention in the state court, which held a hearing after the trial and decided adversely to him. The Supreme Court of Illinois also rejected the claim. The district court has now given full consideration to the question whether the findings and procedures of the state courts are sufficient to foreclose further review under 28 U.S.C. § 2254(d). The district court concluded that they are, and we agree.

■ The parties disagree about just what evidence was before the state court and what inferences should be drawn from it. It is unnecessary to resolve the dispute. It is clear that the depositions of three prisoners were in evidence before the state court. One of these (Scroggins) had been a witness for the state at trial; two (Austin and Case) had not. Scroggins maintained that he had lied and that other witnesses also had lied at the state's behest; Austin and Case said that they had heard that the state procured perjured testimony, though

they could not or would not name names and identify times.** The state trial court rejected the arguments, essentially without opinion. The Supreme Court said: "we do not find that [the evidence] established the knowing use of perjured testimony" (307 N.E.2d at 364). The finding of a state court, even an appellate court, is entitled to deference under § 2254(d), see *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ We agree with the district court that there was such a "finding" here. The state court must have determined that the deponents' statements were not credible. The judge who heard the post-trial motions also presided over the lengthy trial. At the trial 52 witnesses inculpated the defendants. One guard testified that he saw Jones hurl the bomb and heard him shout "contact" to start the riot, another that Jones stabbed him, still another that Jones held him hostage, and so on. Two of the deponents were quite vague about who offered or responded to inducements to perjury. Of the fifteen prisoners who testified, only one (Scroggins) has since recanted and claimed that the state procured perjured testimony. Courts treat recantations and claims of perjury with great skepticism even under the best of circumstances. See *United States v. Krasny*, 607 F.2d 840 (9th Cir.1979) (collecting cases), *cert. denied*, 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980). The judge had heard Scroggins and the 51 other witnesses at trial and therefore was in an unusually good position to make a determination. It is regrettable that he did not make an explicit determination of credibility on the record, but it is plain from the context—and the treatment of the case by the Supreme Court of Illinois—that he indeed made this determination. Cf. *Townsend v. Sain*, 372 U.S. 293, 315, 83 S.Ct. 745, 758, 9 L.Ed.2d 770 (1963) (permissible to reconstruct findings not

** Case, for example, denied that even Scroggins had said that he committed perjury. Case ultimately said that he believed that witnesses had committed perjury because of "[m]y own opinion of the thing because I would have told any lie they wanted me to tell if they would release

me from that charge." He never gave a more definite basis of his testimony. A trier of fact might conclude that Case's testimony was raw speculation—and perhaps even that it was Case's declared propensity to "tell any lie" that led the state not to call Case as a witness.

made expressly). Jones says (and he may be right) that the Supreme Court of Illinois misstated exactly what was in evidence and what was just offered but not admitted, but we do not think this undermines either the procedures or the conclusions of the state court.

■ Jones has not offered new affidavits or any other evidence calling into question the decision of the state courts. He relies essentially on the proposition that because the deponents' statements were uncontradicted the judge was required to credit them. This is not the law. A judge may disbelieve testimony, and he may do this even without giving reasons. Here the ground of a credibility decision was apparent—the judge's experience at trial coupled with the vagueness of the depositions—and we therefore think his findings entitled to force now.

■ One additional ground Jones offers in support of his attack on the state's findings is the observation that ten of the fifteen inmate-witnesses received early release after the trial. Seven of the inmate-witnesses had been asked if they received promises of clemency; all denied such promises. The experience of the ten shows, according to Jones, that the witnesses were lying; at least it furnishes support for the positions of the three deponents. This evidence is troubling but ultimately not dispositive. The evidence certainly suggests a pattern. No one suggests that two-thirds of the prisoners in Illinois jails receive early release under circumstances such as those here. Numbers may speak louder than words in criminal cases as well as in cases of employment discrimination, and the release rates suggest that the witnesses received rewards. But the questions at trial asked if the witnesses had been *promised* early release. A truthful answer of "no" may be perfectly consistent with an actual reward. The state was entitled to reward those who helped make the case, if only because (a) this showed an attitude far preferable to that of prisoners who refused to testify truthfully against their fellow inmates, and (b) the witnesses who testified truthfully may have been in danger back in prison. The fact of early release does not show the promise of early release—or so, at least, the trier of fact would be entitled to conclude.

II

■ Jones argues that the state failed to turn over material required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The material in question is the typed version of interview notes of witnesses. The notes were transcribed on "white cards" and destroyed; the white cards were not turned over at trial; the white cards themselves now apparently have been lost. Jones says that the white cards must have contained information favorable to the defense.

We very much doubt that this issue has been preserved in the state courts. Jones makes an elaborate argument that the issue has been preserved, because his counsel cited in state court some state cases that contained citations to cases in the *Brady* line. The state responds that the cases counsel cited all were in the line of *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), and that because the Supreme Court explicitly has held that *Jencks* is not based on the Constitution, Jones failed to alert the state courts adequately. See *United States v. Augenblick,* 393 U.S. 348, 89 S.Ct. 598, 21 L.Ed.2d 537 (1969) (no constitutional problem in not turning over witness's verbatim statements to defense). The state says that because Jones failed to alert the state court to the substance of the claim, it has been forfeited and may not now be raised. See *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (en banc) (*Sykes* applies to a failure to raise a claim on appeal); *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450, 451–55 (7th Cir.1984); *Nutall v. Greer,* 764 F.2d 462, 463–465 (7th Cir.1985).

The state has the better of the argument. Our review of the appellate brief filed on behalf of Bassett and Jones in the Supreme Court of Illinois, and of the state cases that brief cites, persuades us that Jones was relying on state cases following *Jencks*, not state cases following *Brady*. The brief also cites the Jencks Act, 18 U.S.C. § 3500, and two federal cases in the *Jencks* line. True, as Jones argues, *Jencks* had "constitutional overtones;" it is also true that a constitutional overtone is not a constitutional holding. *Augenblick* made it clear that *Jencks* and *Brady* have quite distinct foundations, and Jones therefore did not preserve any *Brady* claim.

We would not agree with Jones, however, even if he had preserved the claim. His argument boils down to a claim that the white cards must contain exculpatory information, or the state would not have refused to turn them over. This is a constitutional Catch-22. According to Jones, the only way a state can prove its right not to turn over information is to turn over that information. This cannot be right—not even when, as Jones emphasizes, the deponents at the post-trial hearing claimed that witnesses had been induced to commit perjury, a claim that the white cards could have punctured if they showed that the stories had been consistent from the time of the initial interviews. A party need not put in any evidence if it thinks the other side's claim feeble, and the state put in none at the post-trial hearing. ("None" is something of an overstatement. The state offered more than 20 affidavits denying Jones's claims of perjury, but the judge excluded these as hearsay and the state chose not to put on live witnesses.) Its choice to be silent was one the prosecutors were free to make without the creation of a compulsory inference that the state had something to hide. Jones's claim therefore fails for want of evidence that the white cards contained exculpatory information.

### III

Jones contends that the state frustrated his ability to defend himself at trial by instructing guards not to talk to his lawyer. He also contends that the state undercut his ability to support his charge of perjury by instructing inmates not to testify at the post-trial hearing.

■ There is no constitutional right to discover evidence favorable to the state in a criminal case, see *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973), so the inability of a defendant to interview witnesses is a constitutional problem only if the state artificially restricted the defendant's ability to obtain evidence. See *United States v. White*, 454 F.2d 435 (7th Cir.1971), *cert. denied*, 406 U.S. 962, 92 S.Ct. 2070, 32 L.Ed.2d 350 (1972). The only witness who was queried at trial about his willingness to talk to the defense was Captain Sympson, who said that his unwillingness to talk was his own idea. (It is easy to see why a guard who had been stabbed by the inmates would not be eager to cooperate with their counsel before trial, no matter what other officers of the state said.) Sympson and defense counsel visited the Warden together, and the Warden suggested that Sympson discuss the matter with a lawyer for the state. The record is silent on what Sympson or any other witness did thereafter. The record therefore does not show that the state interfered with Jones's access to evidence before trial. The district court found the conversation between the Warden and Sympson to violate the Constitution, but harmlessly because of the power of the evidence against Jones. We think the conversation no violation at all—though it would be harmless under the circumstances. The other scattered evidence about the defense's efforts to interview the guards is too inconclusive to establish obstruction by the state.

■ With respect to potential witnesses at the post-trial hearing, the record contains much evidence tending to show that other inmates had decided of their own volition not to cooperate with defendants at the post-trial hearing. Perhaps they did not think that Jones had a meritorious point and feared prosecution for perjury.

At any event, the fact that a representative of the state talked to these potential witnesses does not mean that the state violated any rights; the record does not show that the representative told the witnesses not to testify or threatened reprisals for testimony. As Jones himself points out in addressing Captain Sympson, one party may interview potential witnesses of the adversary, and the state's election to have some contact with its own prisoners cannot readily be turned into a sinister conspiracy to prevent the introduction of evidence.

## IV

■ The final argument is that the state court failed adequately to sequester the jury in the two-month trial. The court apparently allowed jurors to meet their spouses over the weekends in the absence of bailiffs. We agree with the district court, for the reasons it gives, that this is not a constitutional error. There is simply no evidence that the sort of contacts that are inevitable in any lengthy trial denied Jones a fair trial. We doubt that sequestration was required in the first place. Jurors need not be cut off entirely from the world. Certainly there is no need for perfect sequestration. A court need make no detailed inquiry unless there is first evidence of substantial contact with prejudicial publicity. Here there is none. Cf. *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983).

This has been a lengthy and complex case. The appointed counsel for Jones has pursued this case with vigor and in the highest traditions of the bar. He has the court's thanks, and he should have Jones's for a job well done. No two-month trial involving a prison riot can be a tidy affair. The prisoners are in constant contact with their captors; anticipation of reward and fear of retaliation (from state and fellow inmates alike) must loom large in any potential witness's thoughts; the same concerns may prompt witnesses to change their views later on in either direction. This was not a perfect trial, but it was an adequate one. The evidence is overpowering, no matter what one makes of the claims of errors. Jones has received his due, in courts state and federal, and now must accept his fate.

AFFIRMED.