**Ruben Ramirez SANCHEZ,
Petitioner-Appellant,**

v.

**H.G. MILLER, Warden, United States
Penitentiary, Marion, Illinois,
Respondent-Appellee.**

No. 84–2872.

United States Court of Appeals,
Seventh Circuit.

Argued May 21, 1985.

Decided June 9, 1986.

Rehearing Denied Aug. 5, 1986.

Howard B. Eisenberg, SIUC School of Law, Carbondale, Ill., for petitioner-appellant.

Joel Merkel, Asst. U.S. Atty., Frederick J. Hess, U.S. Atty., Benton, Ill., for respondent-appellee.

Before BAUER and ESCHBACH, Circuit Judges, and SWYGERT, Senior Circuit Judge.

ESCHBACH, Circuit Judge.

The petitioner, an inmate in a federal penitentiary, filed this action for habeas-corpus relief in federal district court challenging the constitutionality of an institution disciplinary hearing conducted in 1980 that resulted in the loss of his good-time credits. The district court concluded that the petitioner's due-process rights had not been violated and granted summary judgment for the respondent.[1] For the reasons stated below, we will affirm.

## I

On November 20, 1979, Charles Hughes, an inmate at the United States Penitentiary in Lompoc, California, was stabbed to death in the prison. On November 21, 1979, the petitioner, Ruben Ramirez Sanchez, was placed in administrative segregation pending an investigation into Hughes's death. On December 13, 1979, Sanchez received an incident report charging him with (1) "Killing" and (2) "Aiding Another and Making Plans to Commit" the killing.[2] The incident report stated that "[c]onfidential information has named you as being one of the assailants in the stabbing death of inmate HUGHES, Charles[,] Reg[.] No. 68858–012(C)" that occurred in "C–Unit, Cell A–12" at "10:30 a.m." on "November 20, 1979."

On December 19, 1979, the Unit Disciplinary Committee ("UDC") at Lompoc found Sanchez guilty of both offenses, and stated in its written decision that its findings were based on "[c]onfidential information obtained by institution staff, confidential memos and statement by reporting officers." The UDC referred the matter to the Institution Disciplinary Committee ("IDC") at Lompoc for a hearing. Sanchez was provided with notice that the IDC hearing was scheduled for December 27, 1979, and signed a form acknowledging that he had been informed of his rights.

On December 27, 1979, Sanchez's request for a two-week postponement was granted, and the IDC hearing was held on January 10, 1980. At the hearing, Sanchez denied that the incident report was "true as written" and maintained that he was in the C-Unit at the time of the murder, but on a different tier. Three inmates testified on behalf of Sanchez, and his remaining three witnesses were excused because Sanchez had indicated that their testimony would have been essentially the same as that of the first three. The IDC report includes a summary of the statements of the three inmates who testified. The IDC considered the testimony of the witnesses, as well as the "[c]onfidential memo from [Investigator Tom Lynch] identifying two inmate witnesses and their confidential information" in reaching its decision, and concluded that Sanchez's "plans resulted in the death of inmate Charles HUGHES." After finding

---

1. Sanchez brought this suit against H.G. Miller in the latter's official capacity as warden at Marion. Jerry Williford is now the warden of that institution. Pursuant to Fed.R.App.P. 43(c), "[w]hen a public official is a party to an appeal or other proceeding in the court of appeals in his official capacity and during its pendency … ceases to hold office, the action does not abate and his successor is automatically substituted as a party."

2. The delivery of the charge had been delayed pending an FBI investigation into the incident.

Sanchez guilty, the IDC ordered (1) a forfeiture of his statutory good time, (2) continued custody in administrative segregation, and (3) a disciplinary transfer.

Sanchez then filed an initial administrative appeal with the warden at Lompoc seeking restoration of his good-time credits and expungement of the incident report; relief was denied on January 25, 1980.[3] He then appealed to the Regional Director of the Bureau of Prisons, who on March 12, 1980, found that the evidence before the IDC only supported the charge of aiding another and making plans to commit the murder, but not the murder charge. The Regional Director instructed the warden to correct any reports that indicated Sanchez had been found guilty of the actual killing. Further relief was denied. Sanchez attempted to file an appeal with the General Counsel, but it was untimely.

Sanchez was indicted by a grand jury and tried in 1982 in federal district court for the Central District of California for the murder of Hughes, conspiracy to commit murder, and aiding and abetting. The jury returned a verdict of not guilty. Sanchez then filed another series of administrative appeals relating to the 1980 IDC action. These appeals were rejected as untimely.[4]

Sanchez was later incarcerated at the United States Penitentiary at Marion, Illinois, and filed this action in the federal district court for the Southern District of Illinois on January 9, 1984. He sought federal habeas-corpus relief on the ground that he was denied due process at the 1980

IDC hearing at Lompoc.[5] By consent of the parties, the case was submitted to a magistrate pursuant to 28 U.S.C. § 636(c). The warden transmitted to the court under seal the documents relied upon by the IDC (including the investigator's memoranda). Each party moved for summary judgment. The magistrate granted the warden's motion and denied that of Sanchez, and the petition for a writ of habeas corpus was accordingly denied. This appeal followed.

II

A. *Failure to Exhaust Administrative Remedies*

It is beyond dispute that Sanchez failed to exhaust his administrative remedies. The respondent brought this issue to the attention of the district court in its first motion for summary judgment, and filed two affidavits that documented the administrative appeals Sanchez had filed. Sanchez did not deny that he failed to meet the exhaustion requirement. After counsel was appointed to represent Sanchez, the original habeas petition was amended to include additional due-process claims. The respondent supplemented his motion for summary judgment to address these new allegations. The magistrate decided the case on the merits and did not discuss the exhaustion issue. The respondent now urges that the judgment below may be affirmed on the ground that Sanchez did not exhaust his administrative remedies. It is, of course, proper for the party in whose favor the judgment was entered to

3. There are three levels of appeals within the federal prison system. The inmate appeals the IDC decision first to his warden, then to the Regional Director, and finally to the General Counsel. *See* 28 C.F.R. §§ 541.19, 542 (1985). Appeal to the Office of General Counsel is the final administrative appeal in the Bureau of Prisons. *Id.* § 542.15. The current regulations governing administrative appeals went into effect on November 1, 1979. *See* 44 Fed.Reg. 62,248 (1979). For a general discussion of the administrative process, see *Anderson v. Miller*, 772 F.2d 375, 377 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986).

4. The notice from the General Counsel informing Sanchez that his second round of appeals was untimely did state, however: "Judicial and administrative standards differ considerably. Accordingly, your acquittal in court would not automatically result in expungement of the IDC action."

5. Sanchez initially proceeded *pro se.* Howard B. Eisenberg, Associate Professor of Law at Southern Illinois University School of Law, was subsequently appointed to represent Sanchez before the district court and on appeal. We are grateful to Professor Eisenberg for his able and distinguished representation of Sanchez.

assert any ground appearing in the record in support of the judgment, whether or not that ground was relied upon by the trial court. *Whitley v. Albers,* — U.S. —, —, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986); *Farmer v. Prast,* 721 F.2d 602, 606 n. 7 (7th Cir.1983).[6]

■ Federal prisoners are ordinarily required to exhaust administrative remedies before petitioning for a writ of habeas corpus. *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983); *see also Anderson v. Miller,* 772 F.2d 375, 377 (7th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1210, 89 L.Ed.2d 322 (1986); *Brice v. Day,* 604 F.2d 664 (10th Cir.1979), *cert. denied,* 444 U.S. 1086, 100 S.Ct. 1045, 62 L.Ed.2d 772 (1980); *Guida v. Nelson,* 603 F.2d 261 (2d Cir.1979); *United States ex rel. Sanders v. Arnold,* 535 F.2d 848 (3d Cir.1976); *Hardwick v. Ault,* 517 F.2d 295 (5th Cir.1975); *Willis v. Ciccone,* 506 F.2d 1011 (8th Cir.1974). Because the time limits for the administrative appeals have long since elapsed and because the Bureau of Prisons has in no way indicated that it will waive the applicable time limits for those appeals, *cf. Anderson,* 772 F.2d at 378, Sanchez cannot now complete the process. His failure to pursue his administrative remedies to their conclusion constitutes a procedural default. *Cf. Engle v. Isaac,* 456 U.S. 107, 124–25 & n. 28, 102 S.Ct. 1558, 1570 & n. 28, 71 L.Ed.2d 783 (1982); *Nutall v. Greer,* 764 F.2d 462, 464 (7th Cir.1985).

The question presented under these facts is what should be the effect of such a default. The respondent urges that the appeal should be dismissed. We disagree, and find instead that Sanchez should be required to make a showing of "cause and prejudice." This court adumbrated such a requirement in *Anderson,* 772 F.2d at 378. However, the issue was apparently not properly presented in that appeal, and we ruled that the prisoners had deliberately failed to comply with the established proce-

dures for prosecuting appeals before the Bureau of Prisons, even though they had twice been warned of the inadequacies of their submissions. *Id.*

The cause-and-prejudice rule was originally articulated in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). *Davis* involved a federal prisoner who, petitioning under 28 U.S.C. § 2255, sought to challenge for the first time the composition of the grand jury that had indicted him. The government argued that such a challenge was barred because the prisoner failed to comply with Fed.R. Crim.P. 12, which provides that objections to grand-jury composition be presented at trial, and that failure to do so constitutes a waiver of the objection, but that the court "for cause shown may grant relief from the waiver." The Supreme Court concluded that review of the claim on a petition for habeas should be barred in the absence of a showing by the prisoner of cause for the failure to comply with procedural requirements and of actual prejudice resulting from the alleged constitutional violation. 411 U.S. at 243–45, 93 S.Ct. at 1583–84.

In *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), the Court applied the rule of *Davis* to a case involving a state procedural requirement that a challenge to the composition of the grand jury be raised before trial. The Court noted that the federal judiciary had the power to entertain such a challenge, but rested its holding on "considerations of comity and concerns for the orderly administration of criminal justice." *Id.* at 538–39, 96 S.Ct. at 1710. Although the state rule at issue in *Francis* did not allow for an exception upon a showing of cause, the Court concluded that the cause-and-prejudice standard of *Davis* should nonetheless apply, because there was no reason to give greater preclusive effect to procedural defaults by federal prisoners than to similar defaults by state prisoners. *Id.* at 542, 96 S.Ct. at 1711. The rule of *Francis* was

---

**6.** Sanchez maintains on appeal that the respondent waived the exhaustion issue by failing to press the claim below. As the discussion in the text indicates, Sanchez's description of the respondent's presentation below is inaccurate.

extended in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), in which the Court held that federal habeas review was barred, absent a showing of cause and prejudice, when the prisoner waived, under state law, his objection to the admission of his confession at trial. *See also Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982). In *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982), the Court applied a requirement of cause and prejudice in a § 2255 action involving Fed.R.Crim.P. 30, which, unlike Rule 12, contained no explicit exception to the requirement of a timely challenge to jury instructions. *See also Nutall v. Greer*, 764 F.2d 462 (7th Cir.1985) (state prisoner who fails to seek leave to present to highest state court constitutional objections forming basis of his habeas petition waives those objections unless he can show cause and prejudice); *Norris v. United States*, 687 F.2d 899 (7th Cir.1982) (cause-and-prejudice standard applicable in determining whether constitutional issue not raised on direct appeal from conviction could be considered in § 2255 proceeding).

As the discussion above indicates, the cause-and-prejudice requirement is generally applied to resurrect a federal habeas petition otherwise precluded by a procedural default, whether the default occurs in federal or state court, at trial or on appeal, and whether or not the procedural rule expressly incorporates a cause-and-prejudice standard.[7] Although courts in cases involving state prisoners usually cite comity as the reason for the cause-and-prejudice requirement, *see Wainwright*, 433 U.S. at 84, 97 S.Ct. at 2505, that rationale does not, of course, support its application to those convicted in federal courts. *See Frady*, 456 U.S. at 162–66, 102 S.Ct. at 1591–93. Rather, the underlying policy seems to be that, before either a state or federal prisoner may seek federal habeas relief, he must first present his claim to the forum initially available, primarily because of the costs

associated with granting a writ of habeas corpus. *See Engle*, 456 U.S. at 126–29, 102 S.Ct. at 1571–72 (discussion of costs). The forum with the primary jurisdiction does not simply provide a preliminary determination, but a final one, and the grant of a habeas writ is intended to be the exception, not the rule. For state prisoners challenging their convictions, that initial forum is the state court system. For federal prisoners challenging their convictions, it is the federal courts in the direct appeal process. For federal prisoners challenging disciplinary proceedings, it is the administrative process. It would be anomalous to allow prisoners challenging their convictions to overcome the bar of a procedural default in the court system through a showing of cause and prejudice, but to dismiss outright the claims of the same prisoners challenging prison disciplinary actions because of a procedural default in the administrative process. *Cf. Francis*, 425 U.S. at 542, 96 S.Ct. at 1711.

In addition, the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar. As the Supreme Court noted in *Schlesinger v. Councilman*, 420 U.S. 738, 756–57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975):

> The [exhaustion] rule, looking to the special competence of agencies in which Congress has reposed the duty to perform particular tasks, is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors. The rule ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions. It also avoids duplicative proceedings, and often the agency's ulti-

---

7. For the reasons stated in *United States ex rel. Spurlark v. Wolff*, 699 F.2d 354, 357–61 (7th Cir.1983) (en banc), and *Norris v. United States*, 687 F.2d 899 (7th Cir.1982), we conclude that the "deliberate bypass" rule does not apply in this case.

mate decisions will obviate the need for judicial intervention.

We also observe that circumvention of the administrative process diminishes the effectiveness of the agency by encouraging prisoners to ignore its procedures. *See McKart v. United States,* 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969); *see also Brice,* 604 F.2d at 666–68; *Smith v. Fenton,* 424 F.Supp. 792, 795–99 (E.D.Ill.1976).

Thus, we reaffirm that a federal prisoner challenging a disciplinary decision within the federal institution must exhaust his administrative remedies before seeking federal habeas relief. In addition, we hold that, if the prisoner has failed to exhaust and the administrative process is now unavailable, his habeas claim is barred unless he can demonstrate cause and prejudice. As noted above, the district court did not rule on the exhaustion question. We could remand for further proceedings, but, as the discussion in the following section will indicate, a remand is unnecessary, because Sanchez cannot demonstrate prejudice. *See Nutall,* 764 F.2d at 465.

### B. *Prejudice*

#### 1. *Use of Confidential Information*

Sanchez's primary claim on appeal is that he was denied due process of law at the 1980 IDC hearing that led to his adjudication of guilt and the loss of his good-time credits. He specifically alleges that the hearing was constitutionally infirm because the IDC did not determine that the confidential informants were reliable and because a showing was not made that the informants were in fact reliable. Sanchez rests his claim on the decision of the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and this court's decision in *McCollum v. Miller,* 695 F.2d 1044 (7th Cir.1982).

In *Wolff,* the Supreme Court set forth the due-process requirements for prison disciplinary proceedings. The Court noted that, although a prisoner is not wholly stripped of constitutional protections when he is imprisoned, lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen.[8] In addition, the Court noted that disciplinary proceedings are not part of a criminal prosecution and, therefore, that the full panoply of rights due a defendant in criminal cases does not apply. Although prisoners may have a liberty interest in good-time credits, there must be a mutual accommodation between (1) the needs and objectives of the correctional institution and (2) the provisions of the Constitution that are of general application. *Id.,* 418 U.S. at 555–57, 94 S.Ct. at 2974–75.

The Court in *Wolff* looked to the procedures developed in the context of revocation of parole and probation,[9] and concluded that some, but not all, of these procedures should apply to disciplinary proceedings implicating a constitutionally protected interest. After noting that parole and probation revocation and prison discipline implicate different interests and that the respective proceedings are conducted in different settings, *id.* at 558–63, 94 S.Ct. at 2976–78, the Court held that, in the context of disciplinary proceedings, prisoners were entitled to 24 hours' advance written notice of the charges against them; the right to call witnesses and present documentary evidence in their defense, unless doing so would jeopardize institutional safety or correctional goals; the aid of a staff member or inmate in presenting a defense, provided the accused inmate is illiterate or the issues complex; and an impartial tribunal. *Id.* at 563–72, 94 S.Ct. at 2978–82. The Court also concluded that there must be a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Id.* at 563–72, 94 S.Ct. at 2978–82. The Court stated that "[w]ithin the limits set forth in this opinion we are content for now to leave the continuing

---

8. *See also Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).

9. *See, e.g., Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

development of measures to review adverse actions affecting inmates to the sound discretion of corrections officials administering the scope of such inquiries." *Id.* at 568, 94 S.Ct. at 2981.

At issue in *McCollum v. Miller*, 695 F.2d 1044 (7th Cir.1982), were the due-process requirements for disciplinary proceedings where the evidence in support of a finding of guilt was provided by confidential informants. *Wolff* requires written notice of the disciplinary charge sufficient to mount a defense. The general notice the prisoner in *McCollum* received of the charges against him precluded the preparation of an effective defense. More detailed notice could not be given, however, without revealing the identities of the informants. In addition, the investigator did not give his report under oath, and he did not testify at the hearing. The IDC would not vouch for the credibility of the informants, but did indicate that the use of informants had proved reliable in the past, although it was apparently not referring to the specific informants involved. This court found that, because there was a significant risk of error under these facts, these procedures did not comport with due process, but concluded that the record was not sufficiently developed to permit a determination of what "additional safeguards" were appropriate in light of *Wolff.* We noted that it should be "feasible to insist that the [IDC] require that its investigative reports be under oath and that the investigator appear in person and be available for cross-examination; but we are not sure whether it is feasible to go further and require the [IDC] to interview—*in camera,* of course—some or all of the informants." [10] This court did not explicitly hold that the IDC must make a reliability finding in all disciplinary proceedings.

Confidential informants were again at issue in *Jackson v. Carlson*, 707 F.2d 943 (7th Cir.), *cert. denied*, 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983), a consolidated appeal of the habeas claims of five federal prisoners. The IDC found one of the prisoners guilty on the basis of an unsworn investigator's report, and the charge was supported by evidence from informants and a prison employee. The investigator did not testify, and the prisoner was not given the report or the names of the informants. He was, however, given detailed notice of the charges against him. His hearing was held to comport with due process. *Id.* at 948. Another prisoner was found guilty on the basis of confidential information, but had adequate notice of the incident, which should have allowed him to identify the informants. In addition, the chairman of the IDC stated on the record that he had firsthand knowledge of the informants and considered them reliable because of "their past record of reliability." These proceedings were also considered constitutional. *Id.* This court in *Jackson* did not read *McCollum* to require an express reliability finding from the IDC in every case. *Id.* at 947, 948.

In *Dawson v. Smith*, 719 F.2d 896, 899 (7th Cir.1983), *cert. denied*, 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984), however, *McCollum* was apparently interpreted to require a reliability finding whenever information relied upon by the IDC was obtained from confidential informants. In that case, the investigator's report stated that the confidential source was considered reliable, and it appeared that the IDC adopted the credibility determination of the investigator. Thus, due process had been observed. 719 F.2d at 899. In *Mendoza v. Miller*, 779 F.2d 1287, 1293 (7th Cir.1985), it was stated that "[t]o protect the inmate's interest in a fair hearing, our court requires some indication of the reliability of confidential informants when confidential information is the basis for a prison disciplinary decision." *McCollum* was read to require that information "supplied by prison informants must be supported by some indication of reliability." 779 F.2d at 1295.

---

10. The district court issued its decision following the remand on May 8, 1985. That decision has been appealed to this court. *McCollum v. Miller,* No. 85–1985 (7th Cir. Argued February 10, 1986).

As the discussion above indicates, *McCollum* addressed the risk of error in (thus, in a general sense, the reliability of) the IDC's use of confidential informants in a specific prison disciplinary proceeding. The aggravating factor, however, was the generality of the notice given the prisoner, which precluded the preparation of an adequate defense. This court concluded that under those facts, when the notice requirements of *Wolff* could not be met (a situation never addressed in *Wolff* itself), "additional safeguards" were necessary. In *Dawson* and *Mendoza*, however, we read *McCollum* more broadly and departed from a case-by-case analysis to set forth a general rule that no longer focused primarily of the type of notice that the prisoner received, but rather on the quality of the evidence upon which the IDC relied. It should be noted that, although in Anglo-American jurisprudence a tribunal is not ordinarily required to provide an assessment of the reliability of witnesses,[11] the setting of disciplinary proceedings departs from the Anglo-American model of a judicial tribunal. *See generally Cleavinger v. Saxner,* —— U.S. ——, 106 S.Ct. 496, 502, 88 L.Ed.2d 507 (1985); *Hewitt v. Helms,* 459 U.S. 460, 472–75, 103 S.Ct. 864, 871–73, 74 L.Ed.2d 675 (1983); *Wolff,* 418 U.S. at 561–63, 568, 94 S.Ct. at 2977–78, 2980–81. Indicia of reliability provide additional protection when other rights of the accused have been circumscribed in the relatively informal setting of prison disciplinary proceedings.

### 2. *Retroactivity*

Even if we assume *arguendo* that Sanchez's characterization of *McCollum* is correct, the rule would not necessarily apply in the instant case. As the Supreme Court stated in *Wolff,* 418 U.S. at 573–74, 94 S.Ct. at 2982–83:

The Court of Appeals held that due process requirements in prison disciplinary proceedings were to apply retroactively so as to require that prison records containing determinations of misconduct, not in accord with required procedures, be expunged. We disagree and reverse on this point.

The question of retroactivity of new procedural rules affecting inquiries into infractions of prison discipline is effectively foreclosed by this Court's ruling in *Morrissey* that due process requirements there announced were to be "applicable to *future* revocations of parole," 408 U.S., at 490, 92 S.Ct., at 2604 (emphasis supplied). Despite the fact that procedures are related to the integrity of the factfinding process, the context of disciplinary proceedings, where less is generally at stake for an individual than at a criminal trial, great weight should be given to the significant impact a retroactive ruling would have on the administration of all prisons in the country, and the reliance prison officials placed, in good faith, on prior law not requiring such procedures. During 1973, the Federal Government alone conducted 19,000 misconduct hearings, as compared with 1,173 parole revocation hearings, and 2,023 probation revocation hearings. If *Morrissey-Scarpelli* rules [dealing with parole and probation] are not retroactive out of consideration for the burden on federal and state officials, this case [involving the application of new procedural requirements in prison disciplinary hearings] is *a fortiori*. We also note that a contrary holding would be very troublesome for the parole system since performance in prison is often a relevant criterion for parole. On the whole, we do

---

11. As this court observed in *Hameetman v. City of Chicago,* 776 F.2d 636, 644 (7th Cir.1985):

Juries, when they render general verdicts, do not explain the basis of the verdict. While the federal district judges are required by Fed.R. Civ.P. 52(a) to issue reasonably detailed findings of fact and conclusions of law in bench trials, we have not heard it suggested that this is required by the Constitution. And when

federal district judges dispose of a case without a trial, as in granting a motion to dismiss or summary judgment, Rule 52(a) expressly excuses them from having to issue findings and conclusions.

*See also Scott v. Village of Kewaskum,* 786 F.2d 338, 341 (7th Cir.1986); *United States ex rel. Jones v. DeRobertis,* 766 F.2d 270, 272–73 (7th Cir.1985).

not think that error was so pervasive in the system under the old procedures as to warrant this cost or result.

■ It is clear then that, as a general matter, new procedural rules for disciplinary proceedings will not be applied retroactively. Thus, the constitutionality of the IDC hearing must be considered under the law in existence at the date of the hearing. *See Cox v. Cook,* 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975); *Johnson v. Holley,* 528 F.2d 116 (7th Cir.1975) (overruled in part on other grounds, *see Bryant v. Grinner,* 563 F.2d 871, 871–72 (7th Cir. 1977)); *Thomas v. Pate,* 516 F.2d 889 (7th Cir.), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975); *Edwards v. Illinois Department of Corrections,* 514 F.2d 477 (7th Cir.1975); *Chapman v. Kleindienst,* 507 F.2d 1246 (7th Cir.1974). The IDC hearing for Sanchez was held on January 10, 1980. *McCollum* was decided on December 20, 1982. Assuming for the moment that *McCollum* prescribed a new procedural rule, it would appear that Sanchez could not rely on it, as his hearing antedated the decision. It is true that in subsequent cases *McCollum* was discussed in connection with IDC hearings conducted prior to December 20, 1982. *See Mendoza,* 779 F.2d at 1290 (IDC hearing held on April 3, 1981); *Dawson,* 719 F.2d at 897 (IDC hearing held on October 25, 1977); *Jackson,* 707 F.2d at 946 (docket numbers indicate federal appeals filed in 1981 and 1982). However, the propriety of the retroactive application of *McCollum* was not discussed in *Mendoza, Dawson,* and *Jackson,* and is therefore an open question in this circuit. Thus, we must determine whether *McCol-*

*lum* set forth a new rule, which under *Wolff* can only have prospective application.

Sanchez argues that *McCollum's* requirement of indicia of reliability was inherent in the holding in *Wolff* that there must be a "written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." [12] We disagree. The *McCollum* rule is not inconsistent with *Wolff,* but neither is it compelled by the earlier decision.[13] *Wolff* has not been read as holding that prisoners are generally entitled to due process in disciplinary proceedings. To the contrary, it sets forth specific minimum procedures and expressly leaves the development of additional safeguards to the discretion of the prison authorities. *See, e.g., Edwards,* 514 F.2d at 479. The Court was unwilling to go further, and has continued to read *Wolff* as calling for no more than the procedures specifically enumerated therein. *See Superintendent v. Hill,* — U.S. —, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Ponte v. Real,* — U.S. —, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). *See also Mendoza,* 779 F.2d at 1301 (Swygert, J., dissenting) (*Wolff* "simply did not address what other procedures were constitutionally necessary as a check on the use by prison officials of confidential, and perhaps unreliable, prison information"); *Dawson,* 719 F.2d at 889; *Kyle v. Hanberry,* 677 F.2d 1386, 1389 (11th Cir.1982) (*Wolff* does not consider use of confidential informants).

■ The case law of this circuit makes clear that a decision calling for a specific procedural rule for disciplinary proceedings that goes beyond the constitutional mini-

---

**12.** Sanchez's citation to *Gomes v. Travisono,* 510 F.2d 537, 540 (1st Cir.1974), for the proposition that a requirement of a reliability determination was inherent in *Wolff* is unavailing. First, the First Circuit was construing, in light of *Wolff,* a consent decree that was entered in the case of *Morris v. Travisono,* 310 F.Supp. 857, 871–74 (D.R.I.1970), and adopted as law by the state. The First Circuit concluded that the rules set forth in *Morris* did not impermissibly burden prison authorities and were not inconsistent with *Wolff.* In any event, the state had acquiesced in and adopted the *Morris* procedures. Second, even if the First Circuit had concluded

that a reliability finding was required by *Wolff,* that was not the established law of this circuit in 1980. Finally, *Cox v. Cook,* 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975), suggests that *Gomes* would only apply in the First Circuit.

**13.** Sanchez acknowledges in his opening appellate brief that "[t]he Court in *Wolff* did not address what specific procedures were required to guarantee the reliability and credibility of confidential informants relied upon by prison disciplinary committees."

mums of *Wolff* will be given prospective effect only. *See, e.g., Thomas,* 516 F.2d at 890. The passage from *Wolff* quoted above illustrates that the primary question is whether the rule imposes greater burdens on the prison authorities, not whether it increases the accuracy of the proceedings. It is true that the Court in *Wolff* did not say that procedural changes could never be applied retroactively, but indicated that the procedural defects at issue did not so undermine the legitimacy of prior disciplinary hearings as to warrant imposing the burden of retroactivity on prison officials. If the sweeping changes mandated in *Wolff* to reduce the risk of inaccurate results are not to be applied retroactively, then the comparatively small change made in *McCollum* cannot, if it burdens prison officials. If *McCollum* is applied retroactively, then all disciplinary proceedings conducted since *Wolff, i.e.,* June 1974, involving evidence from confidential sources are open to challenge. Tens of thousands of findings of guilt could be subject to invalidation. Such a result, with its highly disruptive effect on the disciplinary, parole, probation, and judicial processes, would be manifestly inconsistent with the ruling in *Wolff.* We, therefore, hold that the rule of *McCollum* cannot be applied to prison disciplinary proceedings held prior to the date of its decision, *i.e.,* December 20, 1982.

As noted above, Sanchez's due-process claim must be determined by the state of the law as it existed in January 1980, the date his IDC hearing was held. As we have concluded, *Wolff* did not mandate a reliability finding. Thus, Sanchez cannot rest on his citation to that decision. Because *McCollum* cannot be applied retroactively, his reliance on that decision is also unavailing. We cannot be unmindful that Sanchez was represented by counsel. The respondent raised the retroactivity issue below and on appeal. Sanchez did assert that *McCollum* or *Wolff* could be applied to his hearing, but elected not to argue in the alternative and, thus, did not discuss the state of the law in 1980.[14] Rule 28 of the Fed.R.App.P. requires that the appellant present argument with citations to the relevant authorities. It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel. *See May v. Evansville-Vanderburgh School Corp.,* 787 F.2d 1105, 1118 (7th Cir.1986); *Libertyville Datsun Sales v. Nissan Motor Corp.,* 776 F.2d 735, 737 (7th Cir.1985). Sanchez, therefore, has waived the claim that his disciplinary hearing did not comport with the due process requirements existing in January 1980.[15] *Cf. Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 315 (7th Cir.1986); *Graczyk v. United Steelworkers of America,* 763 F.2d 256, 261 n. 6 (7th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 335, 88 L.Ed.2d 319 (1985).

### III

As developed in Section II, *supra,* the law did not require that there be indications in the administrative record of the reliability of confidential informants when Sanchez's disciplinary hearing was held in January 1980. He cannot, therefore, show

---

**14.** There is a further wrinkle. The retroactivity rule of *Wolff* means that a court must look to the state of the law on the date of the disciplinary hearing. *Cox v. Cook,* 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975), suggests that one must also look to the law of the place where the hearing was conducted, which in this case was Lompoc, California, not Marion, Illinois.

**15.** Sanchez also claims that the written notice of the charge was insufficient. Even applying *McCollum* and its progeny, it is obvious that the notice was adequate. Sanchez also claims that the finding of guilt was not supported by the record. We have reviewed the administrative record *in camera* and cannot say that "no reasonable adjudicator could have found the prisoner guilty of the offense on the basis of the evidence presented." *Jackson v. Carlson,* 707 F.2d 943, 949 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983).

Sanchez also maintains that the incident report should have provided the name of his co-conspirator. This claim was not presented below and is, therefore, waived. *See City of Chicago v. United States Department of Labor,* 753 F.2d 606, 607 n. 1 (7th Cir.1985); *Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984). We express no opinion as to its resolution.

that he was prejudiced by the failure to exhaust his administrative remedies. The judgment of the district court is AFFIRMED.

SWYGERT, Senior Circuit Judge, dissenting.

I agree with the majority's view that the "cause and prejudice" requirement must determine whether an inmate's failure to exhaust administrative remedies should be excused. But I cannot agree that Sanchez failed to demonstrate "prejudice." In my view, the requirement that there be some indicia in the record of the reliability or credibility of confidential informants is implicit in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[1] I would therefore remand this case to take evidence on the question of whether the petitioner had "cause" for failing to exhaust his administrative remedies.[2]

My fundamental difficulty with the majority's approach is its ruling that *Wolff* requires nothing more than the procedures specifically enumerated therein. This ruling means that if prison officials observe, *pro forma, Wolff's* express procedures, prison inmates have no cause to complain. This cannot be correct. In granting specific procedures and discussing in detail the objectives to be promoted thereby, the Court in *Wolff* clearly did not intend to grant inmates a hollow shell of procedural protections, devoid of any meaningful content. *See Kyle v. Hanberry*, 677 F.2d 1386, 1390 (11th Cir.1982); *Helms v. Hewitt*, 655 F.2d 487, 495 (3th Cir.1981), *rev'd on other grounds*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Rather, it intended to compel not only those expressly enumerated procedures, but any other due process requirements necessary to give meaning to those procedures.

Two recent decisions of the Supreme Court support this conclusion: *Superintendent Massachusetts Correctional Institution v. Hill*, —— U.S. ——, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); and *Ponte v. Real*, —— U.S. ——, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985). In each case, the Court considered whether a particular safeguard was required under *Wolff's* assurances of "the minimum requirements of procedural due process." *Wolff*, 418 U.S. at 558, 94 S.Ct. at 2976. In *Superintendent Massachusetts Correctional Institution*, the Court considered whether due process was denied if the prison disciplinary decision was not supported by any evidence in the record. In *Ponte*, the Court considered whether due process required prison disciplinary officials to state their reasons for refusing to hear one of the inmate's proposed witnesses. In both cases, the Court acknowledged that nowhere in *Wolff* did it consider either of the safeguards at issue. Nonetheless, the Court held that each of them was compelled by due process, and it suggested that each of them was, in fact, implicit in one of *Wolff's* expressly articulated procedures. *Superintendent Massachusetts Correctional Institution*, ——

---

**1.** It is important to focus on the precise question presented for review in this case. The petitioner is not complaining about the prison board's failure to employ any particular method for ascertaining the reliability or credibility of the confidential informants. The petitioner's complaint is that he was found guilty solely on the basis of information provided by confidential informants which the UDC did not find to be either credible or reliable and whose credibility or reliability is not readily verifiable from any facts in the record. Thus, the question is not whether the specific procedures set forth in *McCollum v. Miller*, 695 F.2d 1044, 1048–49 (7th Cir.1982) (and as developed in other cases such as *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir. 1985)) are mandated by *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). And it is irrelevant for purposes of this appeal that " '[t]he Court in *Wolff* did not address what *specific* procedures were required to guarantee the reliability and credibility of confidential informants relied upon by the prison disciplinary committees.' " *Ante* at note 13 quoting petitioner's opening brief. Rather, the question is whether *Wolff* implicitly requires that there be some indicia in the record, arrived at by whatever means, that the confidential informants were reliable or credible when this information forms the basis for the disciplinary decision.

**2.** Because I would find this requirement to be inherent in *Wolff*, I do not address either the question of retroactivity or the question raised by *Cox v. Cook*, 420 U.S. 734, 95 S.Ct. 1237, 43 L.Ed.2d 587 (1975).

U.S. ——, 105 S.Ct. at 2762; *Ponte,* —— U.S. ——, 105 S.Ct. at 2196. As the Court in *Ponte* explained:

To hold [in *Wolff*] that the Due Process Clause confers a circumscribed right on the inmate to call witnesses at a disciplinary hearing, and then conclude that no explanation need ever be vouched for the denial of that right . . . would change an admittedly circumscribed right into a privilege conferred in the unreviewable discretion board. We think our holding in *Wolff* . . . meant something more than that.

*Id.* at ——, 105 S.Ct. at 2197.

In effect, the Court in *Superintendent Massachusetts Correctional Institution* and *Ponte* held that in *Wolff* it had implicitly recognized rights in addition to those that were specifically enumerated therein—those rights that are necessary to fulfill those purposes, although the Court had not gone further and prescribed the specific procedures that must be observed to fulfill those requirements.

Significantly, the Court in each of these cases applied its holding to the facts of the case before it, whereas in *Wolff* it refused to do so on the ground of non-retroactivity. To be sure, the issue of retroactivity was not directly raised in either of those cases. Nevertheless, as the majority in this case recognizes, *Wolff* clearly signalled that retroactivity was an important consideration in any case in which new procedural rules are promulgated. It is not unreasonable to assume, therefore, that had the Court conceived of its holdings in *Superintendent Massachusetts Correctional Institution* and *Ponte* to be something more than articulations of principles already inherent in *Wolff* it would have considered the question of retroactivity.

The right claimed in this case is inherent in *Wolff* for two reasons. First, this court has previously concluded that *Wolff's* requirement of a written statement of evidence relied on and the reasons for the decision presumes the inherent right not to be found guilty except by an "appropriate quantum of evidence." *Aikens v. Lash,* 514 F.2d 55, 60 (7th Cir.1975), *vacated on other grounds,* 425 U.S. 947, 96 S.Ct. 1721, 48 L.Ed.2d 191 *reinstated as modified on other grounds,* 547 F.2d 372 (7th Cir.1976). The Supreme Court has recently approved of this conclusion, holding in *Superintendent Massachusetts Correctional Institution,* —— U.S. at ——, 105 S.Ct. at 2774, that fundamental due process requires that the prison disciplinary decision be justified by "some evidence" in the record. In reaching this result, the Court expressly referred to *Wolff's* requirement of a written statement of evidence relied on and the reasons for the decision and its purpose of protecting the inmate against arbitrary decisionmaking. Lawyers and judges may disagree on how much evidence is "some evidence," but it cannot seriously be doubted that uncorroborated hearsay obtained from confidential informants whose good motives are highly questionable, *see Kyle,* 677 F.2d at 1390; *McCollum v. Miller,* 695 F.2d 1044, 1049 (7th Cir.1982), is tantamount to *no* evidence whatsoever.

Second, other circuits have recognized that the right claimed by the petitioner in this case is inherent in *Wolff's* requirement of a written statement of evidence relied on and the reasons for the decision. For example, in *Gomes v. Travisono,* 490 F.2d 1209 (1st Cir.1973), the First Circuit decided that prison inmates were entitled to due process before being transferred for disciplinary reasons from a prison in one state to one in another. It further decided that the pre-transfer process due was the procedures set forth in the consent decree adopted in *Morris v. Travisono,* 310 F.Supp. 857, 871–74 (D.R.I.1970), and later adopted as law by the State of Rhode Island. *Gomes* was subsequently vacated by the Supreme Court, *Travisono v. Gomes,* 418 U.S. 909, 94 S.Ct. 3200, 41 L.Ed.2d 1155 (1974), and remanded for reconsideration in light of *Wolff.*

On remand the First Circuit specifically addressed the issue of whether any requirements of the *Morris* rules not expressly identified in *Wolff* should apply to interstate transfers which are alleged to

have been punitive in nature. *Gomes v. Travisono,* 510 F.2d 537 (1st Cir.1974). One of those requirements was that the prison disciplinary board's findings be supported by substantial evidence. Substantial evidence as defined by the decree included the requirement that "if any of the facts establishing a Board determination are derived from an unidentified informant," "the record must contain some underlying factual information from which the Board ... [could] reasonably conclude that the informant was credible or his information was reliable." *Id.* at 540.

In affirming this term, upon reconsideration in light of *Wolff,* the First Circuit noted that, "if the written statement is intended to withstand scrutiny and guard against misunderstanding, it cannot indicate reliance on speculation or on facts not in the record." It further implied that this requirement was a "necessity in meeting the requirements of *Wolff,*" and that it did not demand anything more than *Wolff.* Other courts have reached the same conclusion. *See Langton v. Berman,* 667 F.2d 231, 235 (1st Cir.1981) ("We continue to advise ... [prison officials] to follow *Wolff's* mandate to devise regulations to assure that the disciplinary board's procedure is adequate to enable it to reasonably conclude that any confidential information upon which it relied was reliable."); *Rinehart v. Brewer,* 483 F.Supp. 165, 170 (S.D. Iowa 1980) (written statement must indicate why prison officials believe the confidential information relied upon to be credible); *Bartholomew v. Reed,* 477 F.Supp. 223, 228 (D.Oregon 1979), *rev'd in part on other grounds sub nom. Bartholomew v. Watson,* 665 F.2d 915 (9th Cir.1982) (same). *Cf. Chavis v. Rowe,* 643 F.2d 1281, 1287 (7th Cir.), *cert. denied sub nom. Boles v. Chavis,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981) (*pro forma* statement of evidence relied on and reasons for guilt with no statement regarding credibility determinations does not fulfill *Wolff's* requirement of written statement of reasons and evidence); *Hayes v. Walker,* 555 F.2d 625, 633 (7th Cir.), *cert. denied,* 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977)

(*pro forma* written statement does not fulfill purposes behind *Wolff's* requirement of written statement of evidence relied on, and therefore does not satisfy due process); *Finney v. Mabry,* 455 F.Supp. 756, 775 (E.D.Ark.1978) ("This Court ... does not view ... *Wolff* as a direction to the federal courts to consider no constitutional claims involving prison disciplinary procedures except those explicitly addressed in that case.").

Moreover, this court in *McCollum* also implicitly recognized that it was not promulgating a "new" rule. We held that where the prison disciplinary action is based solely on information provided by confidential informants and where most traditional procedures cannot be afforded because of valid concerns with institutional safety, other procedures were required to guarantee the accuracy of the prison disciplinary decision. The court simply assumed, correctly in my view, that a decision based solely on untested, possibly vindictive hearsay was a denial of due process under *Wolff.* It then went on to discuss particular procedures short of confrontation that prison officials might employ to demonstrate that the confidential informants were either credible or reliable. Thus, the court in *McCollum* did not promulgate a heretofore unheard of due process requirement. In fact, we recognized that that requirement was compelled *a fortiori* by the holding in *Wolff.* In conformity with *Wolff,* however, the court in *McCollum* left to prison officials the task of devising procedures to implement the requirement.

This reading of *McCollum* is supported by our subsequent decision, *Dawson v. Smith,* 719 F.2d 896, 899 (7th Cir.1983), *cert. denied,* 466 U.S. 929, 104 S.Ct. 1714, 80 L.Ed.2d 186 (1984), in which we held that *McCollum* "recognized ... that when confidential information is the basis of a prison disciplinary decision, there must be some indication of reliability" (emphasis added), but that it was up to the Supreme Court to mandate which specific procedures were constitutionally necessary to imple-

ment this particular requirement. *See also Kyle*, 677 F.2d at 1390.

Finally, the right claimed by the petitioner in this case is inherent in *Wolff* because it is a *sine qua non* of procedural due process; it is implicitly compelled by any decision that compels due process. The Supreme Court long ago recognized that the essence of due process is the protection against arbitrary deprivations, in particular deprivations resulting from information provided by nameless, biased accusers shielded by anonymity from accountability for lying. *See Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Other courts have recognized that it is a contradiction in terms to say that although one is entitled to due process he may still be deprived of a protected interest on the basis of uncorroborated, untested hearsay. Such reasoning results in a denial of reasonably accurate decision-making, and hence amounts to a denial of fundamental fairness. *See, e.g., Kyle*, 677 F.2d at 1390–91.

The facts of this case demonstrate why *Wolff* implicitly requires that there must be indicia of reliability or credibility of the confidential informants. Sanchez was found guilty by the prison board solely on the basis of the confidential information contained in the prison investigator's report. The confidential information was uncorroborated, and there was no corroborating physical evidence. As the Government concedes, there was absolutely no attempt to ascertain the reliability or credibility of any of the informants, any one of whom could have had a personal vendetta against Sanchez. None of the confidential information was set forth in detail in any public record and hence none of it was available to Sanchez. Sanchez received notice of the charges, and attended the hearing. He denied participating in the stabbing, and he presented three alibi witnesses. The UDC found him guilty of planning the murder and of the murder itself. According to Sanchez, the UDC official who made this finding had a personal score to settle with Sanchez because the Regional Director had earlier reversed a finding by the UDC that

Sanchez had assaulted a staff member. On appeal the Regional Director overturned the finding of guilty of murder, noting that there was absolutely no evidence to support it; yet, he sustained the disciplinary sanction in its entirety. Sanchez was ultimately acquitted of all three charges by a jury, presumably because the Government's sole evidence was the inadmissible uncorroborated hearsay of the confidential informants.

As these facts demonstrate, although nominally accorded some procedural safeguards, Sanchez in fact was denied any kind of meaningful due process. We have no way of knowing whether the prison disciplinary action had *any* basis in fact or was simply the result of fabricated information provided by a vengeful co-inmate or the aftermath of a vendetta by prison officials who were unhappy with Sanchez' acquittal on an unrelated assault charge. Sanchez was in fact no better off than he would have been if the prison disciplinary board had simply informed him that he was being deprived of good time credits because of his participation in a murder. Indeed, he may be worse off given today's holding because any suspicion that he may have harbored that prison disciplinary proceedings are arbitrary and, in fact, a meaningless set of *pro forma* steps designed to pay lip service to the real holding of *Wolff* was confirmed.

In sum, the reason why the Supreme Court in *Wolff* did not expressly articulate a requirement that there be indicia of the reliability or credibility of confidential informants in the record is that it did not have to. The right to be adjudged guilty on the basis of competent (including reliable) evidence is a prerequisite to the right to a statement of evidence relied on and reasons for the decision. Indeed, it is implicit in any guarantee of meaningful due process. By recognizing a prison inmate's right to due process, the Court in *Wolff* assumed the fundamental right claimed in this case. *McCollum* did nothing more than articulate what was already self-evident in *Wolff* by mandating that prison

officials afford some procedures to ensure the credibility or reliability of the confidential informants. The *ratio decidendi* of the majority's holding, non-retroactivity, is therefore irrelevant.

The judgment in the instant case should be reversed and the cause remanded.